
DEFENDANT'S EXHIBIT 10 5/18/12 JP

St. Elizabeth Healthcare
One Medial Village Drive
Edgewood, Ky. 41017

October 10, 2010

Mr. Doug Chambers
Vice President of Facilities

Dear Mr. Chambers:

It is my hope that presenting this to you in writing I would be able to accomplish two things. First I will be able to insure that my all of my information will be presented to you for review. Second I am hoping this will allow for a more productive meeting with you.

On Friday August 20, 2010 I was informed by Mr. Kraft that there had been a complaint made at Human Resources that he was allowing me to sleep on duty. I was asked by Mr. Kraft if I had been doing this. I told him yes, that I had been doing this on my breaks and lunch time. I told Mr. Kraft that I could not find any policy that prohibited this and asked him if that was right. He informed me that I probably should not be sleeping anytime. I told Mr. Kraft that I did not know this. He then asked if I thought it could be my diabetes. I responded that maybe that it could be, I was being fatigued and my sugars had been going up and down. I reminded Mr. Kraft that I had told him that he would notice me sweating, that this can occur when I stand still and is related to this problem. Mr. Kraft told me he would contact Human Resources and explain to them what I said and that he was going to give me a Level I write up.

Approximately 2 or 3 hours later, I was asked to come to Mr. Kraft's office and was told by him that he had been told by Human Resources that he could not give me a Level I that it had to be a Level III. I was upset as I could not understand how they would give me a Level III when we were meeting monthly with Ken Rasor during this whole time because as Roxann Platek from Human Resources told me "We do not have a paper trail for his actions. We need to establish this." I requested a meeting with Mrs. Lisa Blank in her office to discuss this.

Mr. Kraft and I went to this meeting together and he was present for all that took place I explained to Mrs. Blank that I did not understand why I was being given a Level III for this violation. I asked her if the work history of an employee who has never been written up, and for 25 years as a Supervisor, always got top ratings for the last almost 34 years, was taken into consideration when deciding what punishment to give an employee.

BL000022

(pg.2)

She told me that that was "Irrelevant and that four other employees' recently had received a Level III for the same thing." I asked her how I would be able to start the dispute resolution concerning this and she told me that this was a "Non-grieveable offense" I told Mrs. Blank that if you do not take an employee's whole work history into consideration when giving punishments that this was unfair and was not right."

Mrs. Blank then said that "And since you said it might be related to your diabetes, you will have to go thru a fit for duty review." I asked why that was needed she said that it was "To see if any medical reasons made you fall asleep." I responded with a question of "What happens to the Level III if it is a medical reason?" She replied "You will still get it anyway" I told her ok to both the Level III and the fit for duty review. She told me that Mr. Kraft would need to schedule this with Employee Health. During this conversation Mrs. Blank asked if "Have you ever seen anyone else sleeping" I replied "Yes, that I have seen employee's sleeping on their breaks in the lobby and nurses at nursing stations, that this has been going on for years." She replied "Not on my watch!" She then asked "Have you ever seen anyone in your office doing this?" I replied "Yes." Mrs. Blank then asked "What did you do about it?" I told her "I told them not to do it again." No further questions were asked.

When I left this meeting I told Mr. Kraft that even though I thought that the punishment was excessive and not fair, I would accept this and move on. I was told that we would make an appointment in Employee Health next week.

On Monday August 23, 2010 I arrived at work 06:00 am and when Mr. Kraft came into work at 08:00 he told me we had a meeting with Employee Health. Mr. Gerald Hynko Director of Employee Health took me in and we completed the necessary process. During this period of questions, Mr. Hynko told me of a new change in the ADA Laws that I was not aware of. In 2009 it was changed to protect individuals with Diabetes as a disability. I did not know until then of such protection. I asked when I was to meet with Dr. Bret Haskell, Business Health and Gerald said they would try to get this done by the end of the week. He said that it would depend on when my Doctors released my records to him. I told him I was scheduled for Vacation 8/28/10-9/12/10 and I asked Mr. Kraft if I should go on this trip. I was told to go and that I would call the second week to get this appointment scheduled.

I called and was given an appointment with Dr. Haskell on September 13, 2010. During my vacation, I repeatedly called and asked Mr. Kraft about any information concerning this issue. He told me he could not give me any as they told him it would violate "HIPPA" laws to tell him. So I had no information about what was being done.

BL000023

(pg.3)

On August 13, 2010 I met with Dr. Haskell and he asked a few questions and told me that there were protections for Diabetes under ADA. I replied that it did not matter as I was told by the Director of Human Resources I was going to get a Level III anyway. He told me I should contact HR as he did not think it worked that way. He then said "How can they punish you if it is a medical reason?" I repeated to him what was said and that I would contact HR

I called Mr. Hynko and asked about what Lisa had said and he told me that he did not think that was so, that usually when this is done, and a medical reason is found, you do not receive any punishment. He told me to call and talk to Roxann about this.

I made a call to Roxann Platek and asked her about the information I received and that statement that was made by Mrs. Blank. Roxann said she would call me back.
No call was ever made to me about this from anyone.

I receive information that there was to be a meeting on September 22, 2010 at 3:00 pm in HR. When I arrive I was met by Mr. Kraft and Roxann Platek. Mrs. Platek told me "The only acceptable reason for falling asleep on duty is Narcolepsy, and since you knew of someone in your office sleeping and you did nothing about it, you were not doing your job as a supervisor so we are terminating you."

I respectfully submit that I have always worked as hard as I could and for the better interest of the hospital and the department I believe that I have contributed far greater value to the organization. The projects that I worked on benefited all of the security departments by saving money and I was moving towards greater goals for the department.

The mistake I made was when my fatigue became a problem; I did not go to Mike Kraft and tell him or seek help from Employee Health. I was pursuing this with my regular Doctors and I was losing this battle. My intimidation that I felt when working with Mr. Kraft, who I respect very much, surrounded my knowing that I was older and that I did not want to fail him or not prove to him I was up to the challenge. When I received the Level III, I believed that if others had been given the same, I would work through this and not let it happen again.

BL000024

(pg.4)

The following questions and points I would respectfully like to make.

1. Why was I terminated for sleeping on duty when I was repeatedly told I got a Level III?

2. Why was I not given any information about what the fit for duty report said?

3. If the only acceptable reason for sleeping on duty is "Narcolepsy" why did Mrs. Blank not tell me this when I first met with her on August 20, 2010? And why send me to a fit for duty if this was true? I was never tested for this by Dr. Haskell in our 30 minute appointment or any other Doctor.

4. Why if the issue of whether or not I did my job as a supervisor was going to cost me my job, why was I not asked when, who, why before my termination? **I did my job and enforced it when I told him not to do it again.**

   This occurred when **Mr. Gross was CEO; Len Puthoff was VP of General Services and Greg Popham was Director of Security.** Mr. Popham and Mr. Puthoff had a hands off approach to certain individuals in the department. **Ken Rasor and Joyce Hazel** were the individuals. I believe that **Jack Denham and Charles Johnson** both supervisors now, will tell you this was the situation.

   This was the norm for 16yrs while Mr. Popham was Director.

5. Why did Ken Rasor not receive a dismissal for Insubordination or a Level II for Improper job performance, poor attitude and/or lack a spirit of cooperation listed in the same policy listing my Level III. #635.03.09, instead of making a paper trail during this time?

6. Why was I not given the same opportunity to gather a "Paper Trail" before I was discharged?

7. Why was my contributions and work history with the hospital disregarded and not considered?

8. Why during this whole process was I not given a chance to defend or fight for my job?

Thank you for your time and considerations of these issues.


Respectfully submitted,


Robert W. Lehman