## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### AT COVINGTON

| | |
|---|---|
| ROBERT LEHMAN ) | Case No.: 2:11-CV-165-WOB/JGW |
| ) | |
| Plaintiff ) | **ELECTRONICALLY FILED** |
| ) | |
| ) | **MEMORANDUM IN SUPPORT** |
| ) | **OF MOTION FOR SUMMARY** |
| vs. ) | **JUDGMENT OF** |
| ) | **DEFENDANT, ST. ELIZABETH** |
| ST. ELIZABETH MEDICAL CENTER, INC. ) | **MEDICAL CENTER, INC.** |
| ) | |
| ) | |
| ) | |
| ) | |
| Defendant ) | |

## I.    INTRODUCTION

Plaintiff admitted to sleeping while at work, which is the stated reason for discharge of his employment.  He has no evidence that this decision was made because of his age or any alleged disability.  Plaintiff as well as 10 other employees after him were all fired for the same reason-sleeping on the job.  Plaintiff's position as a security supervisor was to assure the safety of patients, staff and visitors and this could not be done if he was sleeping.  There are no issues of material fact and summary judgment should be granted.

## II.    PROCEDURAL HISTORY

On August 24, 2011, Plaintiff, Robert Lehman (hereinafter "Lehman" or "Plaintiff"), filed this action against St. Elizabeth Medical Center, Inc. (hereinafter "St. Elizabeth" or "Defendant"). Plaintiff's Complaint alleged that he was discharged from his employment as a Security Supervisor in violation of the Age Discrimination in Employment Act, 29 U.S.C §623 *et seq.*, the Kentucky Civil Rights Act, KRS 344.040; Americans with Disabilities Act,

29 U.S.C. §  and the Kentucky Civil Rights Acts, KRS 344.040.    Discovery is complete and this matter is ripe for summary judgment.

**III.    STATEMENT OF THE CASE**

**A.    Plaintiff's employment with St. Elizabeth Medical Center**

St. Elizabeth has hospitals in Covington, Edgewood, Williamstown, Florence and Ft. Thomas, Kentucky.   St. Elizabeth is sponsored by the Diocese of Covington and is a Catholic health care system.  There are approximately 7,300 employees at St. Elizabeth. (Dubis Dep. p. 10).

Plaintiff began working in security for St. Elizabeth in 1976.  (Lehman Dep. p. 13) He was a supervisor for the last 25 years.  (Plaintiff Dep. p. 20)  Plaintiff's employment was terminated for sleeping on the job.  (Plaintiff Dep. p. 16)  Plaintiff admits that he slept while at work.  (Plaintiff's Dep. pp. 28, 73)  He never asked permission from anyone, including his supervisors, as to whether it was acceptable for him to sleep even on his break times.  (Plaintiff Dep. pp. 31, 33)  Plaintiff admitted that he told Doug Chambers, Senior Vice President of Facilities, that he made a mistake when he let his fatigue become a problem at work.  (Plaintiff Dep. p. 37)  Plaintiff stated that he did not go to Mike Kraft, his supervisor, or seek help from Employee Health even though he knew that he was falling asleep at work.  (Plaintiff Dep. p. 37)  He further admitted that his mistake was not asking for an accommodation from St. Elizabeth.  (Plaintiff Dep. p. 37)  Plaintiff's sleeping was confirmed by Kim DiFilippio, a secretary in the security department.  (Kraft Dep. p. 44)

During the investigation by St. Elizabeth of Plaintiff sleeping while at work, Plaintiff informed Lisa Blank, Director of Recruitment and Employee Relations, that he had seen others sleeping while at work and his response was to tell them not to do so. (Plaintiff Dep.

p. 65)[1]  The only supervisory action he took was to verbally counsel the employees who were sleeping.  (Plaintiff Dep. pp. 74-75)  These previous incidents of sleeping that Plaintiff reported to Ms. Blank occurred under a previous director and management team several years prior.  (Blank Dep. p. 32)

### B.    Plaintiff's Alleged Disability Claim.

Plaintiff alleges that his disability is diabetes and he admits that he has no other disability.  (Plaintiff Dep. p. 61)  He testified that his diabetes causes him to watch what he eats and drink.  (Plaintiff Dep. p. 75)  He also has to be aware of his blood sugar levels constantly.  (Plaintiff Dep. p. 76)  Plaintiff is, however, able to drive and to work and has no other limitations.  (Plaintiff Dep. p. 77)

Plaintiff alleges that during the investigation, his supervisor Mike Kraft asked Plaintiff if he thought his sleeping while at work was due to his diabetes.  (Plaintiff Dep. p. 63)  After Plaintiff told Mr. Kraft that he thought his diabetes caused the sleeping at work, Plaintiff was asked to submit to a fitness for duty examination.  (Blank Dep. p. 32)

Plaintiff believes that he was requested to submit to the fitness for duty exam so that St. Elizabeth could look over his medical records and find an excuse to fire him.  (Plaintiff Dep. pp. 67, 71)  Yet, Plaintiff does not know what individual at St. Elizabeth fired him because of his diabetes.  (Plaintiff Dep. p. 63)  Further, Plaintiff admitted that he does not know who received copies of his medical records, if anyone.  (Plaintiff Dep. pp. 73-74)  Actually, no one other than the Employee Health department ever saw Plaintiff's medical records.  (Blank Dep. p. 82; Dubis Dep. p. 52; Hynko Dep. p. 14)  Doug Chambers, a decision-maker in Plaintiff's termination, was not aware that Plaintiff had diabetes until

---

[1] The investigation regarding reports of Plaintiff sleeping began when Ken Rasor, a security guard, reported to HR advisor Roxann Platek that Plaintiff slept at work.  (Platek Dep. p. 38)

the report that Plaintiff was sleeping at work. (Chambers Dep. p. 44) Ultimately, Dr. Brent Haskell, the physician who did the fitness for duty evaluation, determined that none of Plaintiff's medical conditions caused uncontrollable sleeping. (Blank Dep. p. 73; Dubis Dep. p. 52)

Plaintiff testified that he has a history of fatigue and sleep problems. (Plaintiff Dep. p. 44) In 2008, he was having excessive daytime sleepiness according to a history that he gave to his physician. (Plaintiff Dep. p. 46-47) He also has a history of depression and had been prescribed the anti-depressant Zoloft for many years prior to the termination of his employment with St. Elizabeth. (Plaintiff Dep. p. 104) Despite having these ongoing issues, Plaintiff never asked St. Elizabeth for an accommodation. (Blank Dep. p. 43) Further, Dr. Haskell determined that Plaintiff's fatigue was more of a lifestyle issue because Plaintiff was not going to bed early enough and he was waking up too soon. (Oscadal Dep. p. 64) In fact, Plaintiff reported to Dr. Haskell that he was only getting 4.5 hours of sleep each night. (Oscadal Dep. p. 64)

## C.    Plaintiff's Alleged Age Discrimination Claim.

Plaintiff alleges that his age was also a reason for his termination from St. Elizabeth. (Plaintiff Dep. p. 22) In deposition, Plaintiff agreed that Rick Smith was hired by St. Elizabeth as his replacement but did not know Mr. Smith's age. (Plaintiff Dep. p. 58) In fact, Mr. Smith is older than Plaintiff. (Kraft Dep. p. 92)

Plaintiff's "evidence" of age discrimination is that he observed many eliminations of older, long-term employees by the hospital and that they were replaced by younger employees. (Plaintiff Dep. p. 22) When asked to identify in detail who those individuals were, Plaintiff listed the following:

1.  Len Puthoff, replaced by Doug Chambers.  (Plaintiff Dep. pp. 22-23) However, he does not know why Mr. Puthoff left St. Elizabeth.  (Plaintiff Dep. pp. 22-23)

2.  Greg Popham, replaced by Mike Kraft.  (Plaintiff Dep. p. 23)

3.  George Miller, replaced by younger person in Covington.  (Plaintiff Dep. p. 24)

However, Plaintiff admits that no one ever made a comment to him about his age. (Plaintiff Dep. p. 28)  His only other evidence is that he alleges that he saw younger employees sleeping at work who were not discharged, but could not recall specific names of those individuals.  (Plaintiff Dep. p. 26)

**D.    Plaintiff's Termination of Employment**

There is <u>no</u> dispute that Plaintiff's employment was terminated for sleeping on the job.  Plaintiff does not deny he was sleeping, but instead merely states that he thought this behavior was acceptable since it was on his breaks (Kraft Dep. p. 50).  Chambers was told that Plaintiff admitted to sleeping.  (Chambers Dep. p. 44)  Chambers testified that it did not matter to him if Plaintiff was sleeping on a break or during lunch because it still would not be acceptable.  (Chambers Dep. p. 46)   Security is a serious and significant responsibility to the hospital.  (Chambers Dep. p. 46) Chambers further stated that he would expect an officer who is on break to respond immediately to any security situations that may arise on the St. Elizabeth campus.  (Chambers Dep. p. 46)  If Plaintiff were asleep during such an incident, he would not know that anything was occurring and could not respond immediately.  (Chamber Dep. p. 47)  Kraft also testified that it was not appropriate to sleep during a paid break.  (Kraft Dep. p. 50)  Kraft testified that he understood that St. Elizabeth took a serious stance on sleeping while at work.  (Kraft Dep. p. 65)  He also noted

that the Security and Nursing departments are required to protect people on the St. Elizabeth premises and should not be sleeping while on duty. (Kraft Dep. p. 65)

At the time of Plaintiff's termination of employment, St. Elizabeth had a written policy which stated that an employee who was sleeping at work would receive, at a minimum, a Level III counseling. (Blank Dep. p. 20) However, the policy was only a guideline. (Blank Dep. p. 20). The policy provides that St. Elizabeth can bypass steps in the progressive discipline process to impose a higher level of discipline when warranted by the situation. (Blank Dep. p. 20) This policy is available to all employees on the St. Elizabeth intranet including Plaintiff. (Chambers Dep. p. 21) Plaintiff agreed that the policy was available to him and it was his job to enforce the policy in relation to the officers he supervised. (Plaintiff Dep. pp. 24, 25)

The decision to terminate Plaintiff's employment was that of Doug Chambers, Senior Vice President of Facilities, and Martin Oscadal, Senior Vice President of Human Resources. (Chambers Dep. p. 19) Mr. Chambers testified that he does not support anyone sleeping at work without permission because employees are hired to do a job. (Chambers Dep. p. 37) Similarly, John Dubis, CEO of St. Elizabeth, felt strongly about employees sleeping on paid time. (Oscadal Dep. p. 14; Blank Dep. pp. 20-21) Blank testified that "...John was very intolerant of anyone sleeping on paid time. He didn't feel like any employee should be sleeping on paid time, no matter what the reason." (Blank Dep. p. 45) Dubis himself testified that he was concerned because Plaintiff, St. Elizabeth's security supervisor, acknowledged sleeping during his shifts and allowing other security officers to sleep at work; Dubis thought this was a significant issue. (Dubis Dep. p. 29; Oscadal Dep. p. 14)

St. Elizabeth executives also believed that security officers should be held to a higher standard. (Blank Dep. p. 67; Oscadal Dep. p. 56)   Dubis testified that there are certain things that people who work anywhere understand: "you don't sleep at work." (Dubis Dep. p. 59)   The hospital considered that Plaintiff was a good employee and a long-term employee but found this was outweighed by the fact that Plaintiff was a supervisor and role model to other employees. (Chambers Dep. p. 49; Dubis Dep. p. 64)  By sleeping at work, Plaintiff was unavailable to respond to a potential risk to people on campus. (Chambers Dep. p. 49)  Further, in considering how to proceed with Plaintiff's employment at St. Elizabeth, Chambers found it discomforting that Plaintiff admitted to both sleeping and being unaware of a policy that he was supposed to be enforcing in his position as supervisor. (Chambers Dep. pp. 49, 51, 52)

Since September 2010, there have not been <u>any</u> employees who were caught sleeping at work that were not terminated. (Blank Dep. p. 97)  In fact, St. Elizabeth has terminated the employment of 10 employees for this reason. (Blank Dep. Exh. 8)  As noted on the foregoing exhibit, there were two other security officers who were fired for sleeping and five of the employees terminated were under age 40.  (Blank Dep. Exh. 8)  Additionally, St. Elizabeth changed its policy guidelines so that a first offense of sleeping at work is now stated grounds for termination. (Dubis Dep. p. 37)  Kraft also testified that since the change in policy, the hospital's no-tolerance stance has been consistently enforced. (Kraft Dep. p. 65)

## IV.    LEGAL ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and affidavits show that there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, U.S. 317, 322, 106 S.Ct. 2548 (1986).  To support its motion, the moving party may show that there is an absence of evidence to support the nonmoving party's case.  *Id.* At 325, 106 S.Ct. 2548.  On a motion for summary judgment, all facts and the inferences drawn therefrom are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*  475 U.S. 574, 587, 106 S.Ct. 1348. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2502 (1986).   "The ultimate question in every employment discrimination case involving a claim of disparate treatment is "whether Plaintiff is a victim of intentional discrimination."   *Laws. v. Healthsouth Northern Kentucky Rehabilitation Hospital Limited Partnership*, 828, F.Supp. 2d 889, 906 (E.D. Ky. 2011)

As set forth below, based on all of the evidence in the record, there is no issue of material fact to preclude summary judgment.  Plaintiff <u>admits</u> to the very conduct, sleeping on the job, that caused his termination of employment.  He has no evidence that his age or disability were a factor or consideration in his termination of employment.

## V.    SUMMARY OF LAW-ADEA & KRS 344.040

The Age Discrimination in Employment Act ("ADEA") makes it an unlawful employment practice to discharge an individual because of that person's age. 29 U.S.C. § 623(a)(1); KRS 344.040.[2]  In the absence of direct evidence of discrimination, claims under

---

[2] Standards for ADEA & KCRA claims are the same so court's federal analysis subsumes the state claim. *Laws, supra* at 907.

the ADEA are typically analyzed within the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the *McDonnell Douglas* framework, Plaintiff first must establish a *prima facie* case by showing that (1) he was at least 40 years old at the time of the alleged discrimination, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class. An alternate showing for the fourth prong in a disparate treatment age discrimination case is that Plaintiff may show he was treated differently than similarly situated individuals. *Id*. Laws, *Supra* at 908.

If Plaintiff establishes a *prima facie* case, the burden of production then shifts to St. Elizabeth to show evidence of a non-discriminatory reason for its action. *Id*. If St. Elizabeth can come forth with such a reason, the burden returns to Plaintiff to demonstrate that St. Elizabeth's proffered reason is pretextual. *Id*. In age discrimination claims, the U.S. Supreme Court has held that the plaintiff must also show at this stage that age was the but-for cause of the employer's adverse action, not just a motivating reason. *Gross v. FBL Financial Services*, 129 S.Ct. 2343, 2351 (2009); *Laws v. Healthsouth Northern Kentucky Rehabilitation Hosp. Ltd. Partnership,* 828 F. Supp 2d 899 (ED. Ky. 2011) The burden of persuasion remains at all times with the plaintiff to prove that a discriminatory animus motivated the employer's decision. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006), *citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

### A.  Plaintiff Cannot Prove a Prima Facie Case of Age Discrimination

Plaintiff cannot succeed on his ADEA claim since he cannot demonstrate that he was replaced by someone outside the protected class or that he was treated less favorably

than employees under age 40. Since Plaintiff's replacement, Rick Smith is older, to satisfy the fourth element of his age discrimination claim, Plaintiff must use the alternate theory and show "that similarly situated non-protected employees were treated more favorably." *Coomer v. Bethesda* Hosp., Inc., 370 F.3d 499, 511 (6th Cir. 2004). To be considered "similarly situated . . . the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1998).

Plaintiff has not presented any evidence showing that similarly situated individuals were treated differently when found sleeping on the job. Plaintiff alleged in his testimony that he saw younger employees sleeping on the job who were not terminated, but in that testimony he was unable to identify any specific details regarding these allegations. (Plaintiff Dep. p. 26) Plaintiff has presented no evidence of comparators to substantiate his allegation that younger, similarly-situated employees were treated more favorably. The policy of not being allowed to sleep while at work was enforced against many other employees at St. Elizabeth. (Blank Dep. Exh. 8) Ten other employees were terminated at or after the same time as Plaintiff for sleeping at work. (Blank Dep. Exh. 8) St. Elizabeth is a hospital system that cares for acutely ill patients and needs to ensure the highest quality of care and safety for patients, staff and visitors. Plaintiff's position as a security supervisor required him to be sure that employees, staff and visitors were safe while at the facilities. There are numerous security incidents that arise at St. Elizabeth, some of which are life-threatening. If Plaintiff was asleep, even during a break, and was unable to respond immediately, this could be disastrous.

Presumably, Plaintiff will argue that prior to Plaintiff's termination, another St. Elizabeth employee was given a Level III counseling for sleeping. Amanda Rickey, a Registered Nurse, slept on the job prior to the incident involving Plaintiff and was issued a Level III warning. (Blank Dep. pp. 46-47)  Several months later she was found sleeping again and was terminated. (Blank Dep. pp. 49-50)  Her situation, however, is not similar to Plaintiff's for several reasons.  First, prior to sleeping in an empty patient room, Rickey informed her supervisor that she was not feeling well and needed to lay down. (Blank Dep. p. 46)  Rickey's supervisor knew that Rickey would be unable to respond to immediate patient care issues, whereas Plaintiff slept at work and did not inform anyone before doing so.  While Plaintiff was sleeping, he was unable to respond to emergencies that could arise and he caused greater risk because no one had knowledge that he was asleep.  Also, Mr. Dubis and Mr. Oscadal were not aware of Ms. Rickey and her sleeping infraction until after the fact.  (Blank Dep. p. 46)  Once Mr. Dubis expressed his opinion that every employee caught sleeping would be fired, every employee thereafter has been terminated.

## B. St. Elizabeth had a Legitimate, Nondiscriminatory Business Reason for its Actions

Assuming Plaintiff can meet his prima facie case, which is denied, St. Elizabeth had a legitimate reason for terminating his employment.  It was reported by two individuals that he was sleeping while at work and he admitted it himself.  He was given the benefit of the doubt when he stated his sleeping was caused by a medical condition.  The exam determined that was not true and there was not a medical reason causing him to uncontrollably sleep at work.

Further, termination of employment for sleeping on the job has been upheld by many courts as a legitimate reason for termination of employment.  *See Cartwright v.*

*Lockheed Martin Utility Services, Inc.*, 40 Fed.Appx. 147 (6th Cir. 2002) (summary judgment upheld on claims of discrimination); *Brohm v. JH Properties, Inc.*, 149 F.3d 517 (6th Cir. 1998)(sleeping during medical procedures was a legitimate reason for termination); *Oakley v. Oakmont Resort Condo Ass'n, Inc.*, 2010 WL 234721 (E.D. Tenn)(claim of retaliation based on Department of Labor audit dismissed on summary judgment where employee was caught sleeping at work); *See also Bowie v. Advanced Ceramics*, 72 Fed.Appx. 258, 263 (6th Cir. 2003) (employee's demotion for sleeping on the job constituted a legitimate, non-discriminatory reason for action); *Gant v. Univ. of Mich. Med. Ctr.*, 21 Fed.Appx. 435, 436 (6th Cir. 2001) (sleeping on the job a clear violation of employer's policy and legitimate reason for employee's termination).

### C.    Plaintiff Cannot Prove Pretext

Once a defendant articulates a legitimate, non-discriminatory business reason, the burden of production switches to the Plaintiff to prove that the reasons for termination were false and that age discrimination was the real reason.[3] *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742 (1993). Plaintiff must produce specific, substantial evidence of pretext. *Id.*

Here, Plaintiff cannot demonstrate that St. Elizabeth's reasons for his termination are pretextual, nor can he demonstrate that his age was the "but-for" cause of his termination. This demonstration is necessary for Plaintiff to prevail on his ADEA claim. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009). There is no evidence that age was the real reason for termination of Plaintiff's employment. Plaintiff has admitted that no one at St. Elizabeth has ever said anything regarding his age.

---

[3] The burden of persuasion stays with the Plaintiff at all times.

(Plaintiff Dep. p. 28)  See, *Schmidt v. American Retail Corp.*, 2010 WL 5093094 (E.D. Ky.) (Summary judgment granted on ADEA claim – Plaintiff cited no age related animus).

When questioned as to his evidence, Plaintiff testified that other long-term and older employees seemed to be terminated from St. Elizabeth, however, he does not know the circumstances of their terminations or resignations. (Plaintiff Dep. pp. 22-24) This speculative evidence concerning other employees is simply not enough to establish his claim of age discrimination.  Plaintiff cannot establish pretext by showing Defendant's rationale was mistaken, foolish, trivial or baseless so long as Defendant honestly believed in the rationale and based the belief on particularized facts before it at the time.  *Schmidt, supra* at *7.  Absent supporting evidence, Plaintiff's age discrimination claims are merely conclusory allegations and this is not enough to withstand summary judgment.  *Sander v. Gray Television Group*, 2010 WL 3781639 (E.D. Ky.) *7

Plaintiff admitted to the very conduct that caused his termination and ten others (including 5 under age 40) were terminated for the same behavior.  There is no evidence that Plaintiff's termination related in any way to his age.  Further, Plaintiff's age was not the but-for cause of his termination.  Plaintiff did not fulfill the responsibilities of his position when he slept on the job and this was the reason for his termination.  Summary judgment on his age claim is warranted.

## VI.    SUMMARY OF LAW- ADA

The Americans with Disabilities Act of 1990 ("ADA") makes it an unlawful employment practice to discharge an individual because of that person's disability.  In the absence of direct evidence of discrimination, claims under the ADA are typically analyzed within the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Under the *McDonnell Douglas* framework, plaintiff first must establish a prima face case by showing that (1) he was an individual with a disability and (2) he was otherwise qualified to perform the job's requirements, with or without reasonable accommodation, and (3) his disability was the but-for cause of the employer's adverse action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 312 (6th Cir. 2012, *en banc*). *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996) (abrogated in part). *See also Henderson v. Ardco, Inc.*, 247 F.3d 645, 649 (6th Cir. 2001); KRS 344.040(1). Disability discrimination claims under Kentucky Civil Rights Act are to be interpreted consonant with the ADA. *Macy v. Hopkins Co. Board of Education*, 429 F. Supp. 2d 888, 902 (E.D. Ky. 2006). The rest of the McDonnell-Douglas analysis has previously been articulated in the ADEA argument and is the same for the ADA claim.

### A. Plaintiff Cannot Prove a Prima Facie Case of Disability Discrimination.

### 1. Plaintiff is Not an Individual With a Disability

Plaintiff cannot prove that he is an individual with a disability. In order for Plaintiff to succeed on his ADA claim, he must show that he is disabled. A "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment . . ." 42 U.S.C. § 12102(1); *see also* K.R.S. § 344.010(4). Plaintiff bears the burden of establishing his disability. *Monette*, 90 F.3d at 1178.

### a. Plaintiff is Not Actually Disabled

To determine whether Plaintiff is disabled under section (A) of the statute, a two-step inquiry is required. First, Plaintiff must show that he suffered from a mental or physical impairment. *See* 42 U.S.C. § 12102(1)(A); *Azzam v. Baptist Healthcare Affiliates*,

*Inc.*, 2012 WL 28117, *4 (W.D. Ky. 2012). Federal regulations define a physical or mental impairment as "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine . . ." 29 C.F.R. § 1630.2(h)(1).

Plaintiff has health issues including morbid obesity, sleep apnea, and diabetes. According to Sixth Circuit Court of Appeals, morbid obesity constitutes an impairment under the ADA *only* when it is the result of a physiological condition. *E.E.O.C. v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 443 (6th Cir. 2006). Further, even if these health issues qualify as physical impairments, which the Defendant denies, diagnosis of an impairment does not establish that the Plaintiff is disabled. *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002*)* (noting "[i]t is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment"); *see also Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999) (disability not based on the diagnosis, but on the effect of the impairment on the life of the individual). Simply having a medical diagnosis is not sufficient to establish a disability for the purpose of the ADA. *Laws v. HealthSouth N.Ky. Rehab. Hosp.*, 828 F.Supp.2d 889 (E.D.Ky.2011) (granting summary judgment to employer because plaintiff did not show she was disabled under the ADA, never requested an accommodation and worked full schedules).

Next, Plaintiff must show that this physical or mental impairment substantially limits a major life activity. Major life activities are activities that are of central importance to daily life. Both sleeping and working are major life activities. *See* 42 U.S.C. § 12102(2). Under the ADA Amendments Act of 2009 ("ADAAA"), the scope of the term "substantially

limits" has been expanded to be more inclusive and less demanding. 29 C.F.R. § 1630.2(j)(1). Thus, "an impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Plaintiff has not demonstrated that his impairments have restricted his ability to work, either in a specific position or in a broad range of positions. In fact, Plaintiff testified that he is able to work, drive and has no limitations. (Plaintiff Dep. p. 77). Plaintiff therefore has not shown that he is limited in his ability to work and instead has admitted to just the opposite – that he is able to work.

Regarding an inability to sleep, one court has noted that "[g]etting between two and four hours of sleep a night, while inconvenient, simply lacks the kind of severity we require of an ailment before we will say that the ailment qualifies as a substantial limitation under the ADA." *Boerst v. General Mills Operations, Inc.*, 25 Fed.Appx. 403, 407 (6th Cir. 2002). Courts have also found that a diagnosis of diabetes does not establish that an employee is disabled, and some additional showing that the diabetes substantially impairs the employee's major life activities is required. *See Salim v. MGM Grand Detroit, L.L.C.*, 106 Fed.Appx. 454, 458 (6th Cir. 2004); *Mohr v. Hoover Co.*, 97 Fed.Appx. 620, 623 (6th Cir. 2004). Finally, a court has also found that an employee's sleep apnea must substantially limit a major life activity in order to render the employee disabled under the ADA. *Cartwright v. Lockheed Martin Utility Services, Inc.*, 40 Fed.Appx. 147, 153-54 (6th Cir. 2002). Plaintiff suffers from health ailments, but these do not rise to the level of impairments that substantially limit a major life activity. Plaintiff has not demonstrated any activities in which he is substantially limited and has specifically admitted that he can work and drive. (Plaintiff Dep. p. 77)

16

### b. Plaintiff Does Not Have a Record of Impairment

The language of the ADA makes clear that "[a]n individual is disabled if he or she has a record of a physical or mental impairment that substantially limits a major life activity." 42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)(2). A person is disabled by having a record of an impairment when that person "has a history of, or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *Sebest v. Campbell City School Dist. Bd. Of Educ.*, 94 Fed.Appx. 320, 326 (6th Cir. 2004). To sufficiently demonstrate that Plaintiff has a record of impairment, he must show, in addition to the existence of a history of impairment that he has "actually suffered a physical impairment that substantially limited one or more of [his] major life activities." *Edwards v. Ford Motor Co.*, 218 F.Supp.2d 846, 851 (W.D. Ky. 2002), *citing Hilburn v. Murata Elec.'s N. Am., Inc.*, 181 F.3d 1220, 1229 (11th Cir. 1999). In sum, Plaintiff must demonstrate that his current or past health issues qualify as actual impairments and that these issues substantially limit one or more of Plaintiff's major life activities. Absent such a showing, Plaintiff cannot prevail in demonstrating that he is an individual with a disability based upon a record of impairment.

Plaintiff has not demonstrated any record of impairment and has not established any misclassification as having an impairment. St. Elizabeth had no knowledge of any impairments. No one in a decision-making position at St. Elizabeth viewed Plaintiff's medical records, and the issue of Plaintiff's diabetes was not raised by Plaintiff until <u>after</u> Plaintiff had violated St. Elizabeth policy by sleeping at work. Further, as discussed above, Plaintiff is not limited in any major life activity. Plaintiff admits that he can work and drive. Therefore, Plaintiff has no record of impairment.

### c. Plaintiff Is Not Regarded as Having Such Impairment

The third and final method by which Plaintiff can show that he is disabled is by demonstrating that he is an individual with a disability because he was regarded by his employer as having such an impairment.   Under the ADA, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3).  The 2009 Amendments to the ADA expanded the definition of "regarded as" to be more inclusive by not requiring a plaintiff to show that the employer perceived the impairment as limiting a major life activity.  *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012).  Thus, a plaintiff's showing that his or her employer knew of or perceived the employee's impairment is sufficient to meet the requirements of the "regarded as" prong under the revised ADA.  *See Azzam v. Baptist Healthcare Affiliates, Inc.*, 2012 WL 28117, *7 (W.D. Ky.) (applying the broadened standards of the ADAAA and finding that evidence supporting the plaintiff's claim that the employer knew of or perceived the plaintiff's impairment was sufficient to show that Plaintiff was regarded as disabled).

Plaintiff has not presented any evidence showing that St. Elizabeth regarded him as disabled.   Plaintiff did not ask for any accommodation whatsoever. (Blank Dep. p. 43). Plaintiff has not shown that Defendant regarded Plaintiff as suffering from any impairment and thus has not demonstrated a case of "regarded as" disability even under the broader and less stringent standards of the ADAAA.

With respect to the fitness for duty test requested by Defendant, there are numerous cases stating that an employer's request of a fitness for duty exam is not sufficient to prove

a case of "regarded as" disabled under the ADA. *See, e.g., Krocka v. City of Chicago*, 203 F.3d 507, 515 (7th Cir. 2000). The Seventh Circuit has stated that "[t]he steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof . . . that the employer regarded the employee as disabled." *Krocka,* 203 F.3d at 515 (noting that "[i]t was entirely reasonable, and even responsible," for the police department to evaluate the officer's fitness for duty "once it learned that he was experiencing difficulties with his mental health").

By regulation, an employer "may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity." 29 C.F.R. Section 1630.14(c). Further, "a request for an IME [independent medical examination] that complies with the statutory restrictions will never, in the absence of other evidence, be sufficient to demonstrate that an employer 'regarded' the employee as [disabled]." *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 515 (3rd Cir. 2001) (holding that employer's request for an IME after bus driver injured his back, which was limited only to the assessment of the physical requirements of bus driving, was consistent with business necessity and did not compel finding that driver was regarded as disabled); *see also Sullivan v. River Valley School District*, 197 F.3d 804, 810 (6th Cir. 1999) (the fact that the school district asked teacher to undergo a fitness for duty following his exhibiting some unusual behavior was not enough to suggest that the district regarded him as disabled).

Additionally, "[c]ourts have repeatedly held that requiring mental and physical examinations to determine fitness for duty are not enough to suggest that an employee is regarded as mentally disabled." *Graham v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 451 F.Supp.2d 360, 372 (D. Conn. 2006) (requiring employee to undergo mental

evaluation after threatening to "go postal" to determine if he was fit for duty was not sufficient evidence that employer perceived employee as disabled).  "The steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof ... that the employer regarded the employee as disabled." *Wisbey v. City of Lincoln Nebraska*, 2009 WL 974945, *9 (D. Neb. 2009) (citation omitted) (holding no evidence of a perceived disability where employee -- an emergency dispatcher -- admitted to sleep and concentration problems, employer ordered a fitness for duty and then terminated employee because per the medical examiner, she could not meet the job duties of reliable attendance, and maintaining alertness and concentration).

Although Defendant asked Plaintiff to undergo a fitness for duty examination, this is not conclusive as to Defendant's beliefs as to whether Plaintiff is impaired or cannot perform a major life activity.  St. Elizabeth requested Plaintiff undergo the fitness for duty exam because <u>he claimed</u> he slept due to his diabetes. (Blank Dep. p. 32)  The request for the exam was made after Plaintiff presented a medical reason for why he might not be able to safely perform his job.  (Blank Dep. p. 32)

Plaintiff cannot meet the first requirement of his prima facie case because he cannot establish that he is disabled under any of the methods available for making this showing.

### 2. *Plaintiff is Not a Qualified Individual*

To meet his prima facie case, Plaintiff must also demonstrate that he is qualified for his position, with or without reasonable accommodations.  *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996).  Specifically, a "qualified individual" is someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  To

establish that he is a qualified individual with a disability, Plaintiff must show: (1) that he satisfies the prerequisites for the position he holds or desires, such as possessing the appropriate educational background, employment experience, and skills; and (2) that he can perform the essential functions of the position held or desired, with or without reasonable accommodation. *Burns v. Coca-Cola Enterprises, Inc.*, 222 F.3d 247, 256 (6th Cir. 2000).

With respect to the essential functions of the position, the federal regulations state that "essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Further, "[e]vidence of whether a particular function is essential includes . . . the employer's judgment as to which functions are essential . . . [and] the consequences of not requiring the incumbent to perform the function." 29 C.F.R. § 1630.2(n)(3).

Plaintiff was not able to perform the essential functions of his security supervisor position because he was unable to stay awake. The position requires oversight of other members of the security staff and immediate response to any emergency situations that may arise on the St. Elizabeth campus. (Chambers Dep. pp. 46-47) The ability to stay awake in order to appropriately respond immediately, even while on break, was an essential function of Plaintiff's position. The fact that St. Elizabeth has subsequently terminated two other security officers for the same offense as Plaintiff clearly demonstrates that staying awake is an essential function of the security officer position.

In this case, Plaintiff never requested any sort of accommodation from St. Elizabeth. (Blank Dep. p. 43) Assuming Plaintiff is disabled, which Defendant denies, it is Plaintiff's responsibility to identify the need for a reasonable accommodation if this is necessary for

Plaintiff to perform his job's requirements.   Plaintiff made no such request while employed.

### 3. Plaintiff's Disability Was Not the But-For Cause of His Discharge

Finally, Plaintiff cannot establish his prima facie case because his disability was not the but-for cause of his termination.  In the Sixth Circuit, a prima facie case of disability discrimination requires a showing of causation.  Plaintiff must demonstrate that, but-for his disability, St. Elizabeth would not have terminated his employment.  *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012, *en banc*).  In a case wherein a physician suffering from chronic sleep deprivation was terminated for sleeping on the job, the Sixth Circuit Court of Appeals found that "the fact that the employee was terminated for sleeping on the job [did] not establish discrimination on the basis of his chronic sleep deprivation."  *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 522 (6th Cir. 1998).  The court ruled that "evidence that an employer knows that an employee has a disability is not enough to establish that this knowledge was the basis for the termination."  *Id*.  The Sixth Circuit has further stated that "an employer may fire a person for his conduct even if that conduct is related to the employee's disability." *Maddox v. University of Tennessee,* 62 F.3d 843, 848 (6th Cir. 1995).

Therefore, assuming that Plaintiff is disabled and is a qualified individual, which Defendant denies, Plaintiff must still present evidence that his disability was the but-for reason for his termination.  Plaintiff cannot meet this burden because he was discharged for sleeping on the job and for failing to fulfill the requirements of his position.  Plaintiff's alleged disability has no relation whatsoever to his discharge. Plaintiff was unable to stay awake, but there was not a medical reason for him to uncontrollably sleep at work.  The sole reason for his termination was that he did not meet the requirements of his position

when he chose to sleep at work and this behavior placed St. Elizabeth at risk.  There was no discriminatory animus present.

### B.    St. Elizabeth Has Articulated a Legitimate, Non-discriminatory Business Reason for its Actions

As stated previously, St. Elizabeth terminated Plaintiff's employment for sleeping. It is not in dispute that he slept at work.  Assuming that Plaintiff has established a prima facie case of disability discrimination, which St. Elizabeth denies, Plaintiff's claims still fail because St. Elizabeth has offered a legitimate explanation for Plaintiff's discharge.  *See Brohm v. JH Properties, Inc.*, 149 F.3d 517, 522 (6th Cir. 1998).  Plaintiff was terminated for sleeping on the job, and courts have affirmed that this is a legitimate business reason for an employee's termination.  As discussed previously, courts have consistently held that sleeping on the job is a legitimate, non-discriminatory reason for termination of employment.  *See, e.g., Cartwright v. Lockheed Martin Utility Services, Inc.*, 40 Fed.Appx. 147, 155 (6th Cir. 2002) (summary judgment for employer upheld on claims of discrimination after finding that employee's violation of no sleeping on the job policy constituted a legitimate, non-discriminatory reason for discharge).

### C.    Plaintiff Cannot Prove Pretext for Discrimination

St. Elizabeth has articulated a legitimate, non-discriminatory business reason for Plaintiff's discharge.  The burden of production switches to Plaintiff to prove that the reasons for termination were false and that disability discrimination was the real reason. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742 (1993).  Plaintiff must produce specific, substantial evidence of pretext.

To demonstrate that St. Elizabeth's stated reason for Plaintiff's discharge was pretextual, Plaintiff must prove either that: (1) Defendant's stated reasons had no basis in

fact; (2) Defendant's stated reasons did not actually motivate his termination of employment; <u>or</u> (3) Defendant's stated reasons were not sufficient to motivate the discharge.  *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994) (overruled on other grounds by *Geiger v. Tower Auto.*, 579 F.3d 614 (6th Cir. 2009).  Plaintiff cannot meet any of these three standards.

Under the first standard, Plaintiff cannot show that St. Elizabeth's stated reasons had no basis in fact.  The evidence adequately and overwhelmingly establishes a factual basis that St. Elizabeth terminated Plaintiff's employment because he slept at work and was unable to perform the functions of his supervisory position.  Plaintiff himself admitted that he slept at work. (Kraft Dep. p. 50)  As a result, Plaintiff cannot meet the first standard.

Under the second standard, Plaintiff cannot show that St. Elizabeth's stated reasons did not actually motivate their decision.  Around the time of Plaintiff's discharge, St. Elizabeth's CEO adopted a tougher stance on employees sleeping at work.  Stricter enforcement of an already-existing policy led to Plaintiff's termination, and this was not evidence of pretext.

In *Woodfold v. Ormet Primary Aluminum Corp.*, 191 F.Supp.2d 703 (M.D. Louisiana 2001), an employee brought claims for race and disability discrimination after he was discharged for violation of his employer's no-sleeping rule. The employer had a policy which "prohibited an employee from sleeping during work hours," but the employer was lax in enforcing this policy for many years.  *Id.* at 705.  In 1994, the employer decided to begin strict enforcement of the rule and supervisors were explicitly told "that they had no discretion as to the penalty for sleeping employees and that the guilty employee in all such instances was to be discharged."  *Id.* at 706.  The plaintiff was discovered sleeping on

the job in 1997 and was immediately discharged.  *Id*. The plaintiff argued that the employer's reason for his termination (sleeping on the job) was pretext and that he was discharged because of his race.  *Id*.  The employer conceded that prior to 1994, the no sleeping rule was not strictly enforced, but went on to present evidence "that at least seven other individuals, both Caucasian and African American, were discharged for sleeping . . . prior to [the plaintiff's] discharge and after the 1994 change of policy."  *Id*.  In explaining its decision, the court specifically stated: "the fact that [the plaintiff] is an African American; is obese; has high blood pressure; is on medication; and perhaps suffers from a sleeping disorder played no role in his termination."  *Id*. at 709.  Thus, the court found that the employer's decision to terminate the plaintiff "was a business [decision] that [was] legitimately supported by the evidence."  *Id*.

The facts of the aforementioned case are strikingly similar to the circumstances surrounding Plaintiff's termination.  St. Elizabeth made a business decision to strongly enforce an already existing policy and Plaintiff, along with many other employees, was terminated because he did not comply with hospital policy.  This was not pretext but simply an employer requiring its employees to stay awake at work.  Plaintiff did not stay awake at work and was discharged for this reason alone.

Finally, under the third standard of *Manzer*, Plaintiff cannot show that St. Elizabeth's stated reasons were not sufficient to motivate his discharge.  St. Elizabeth terminated Plaintiff because he did not fulfill the requirements of his position and placed the hospital at risk.

## VII.   CONCLUSION

Based upon the foregoing, Plaintiff's claim for age discrimination and disability discrimination must fail.  There are not material issues of fact.  Defendant, St. Elizabeth

Medical Center, respectfully requests that Plaintiff's lawsuit be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Kelly A. Schoening
Robert M. Hoffer    (KBA# 32410)
Kelly A. Schoening (KBA #86745)
Nicholas C. Birkenhauer (KBA #91901)
Dressman Benzinger LaVelle psc
3500 Carew Tower
441 Vine Street
Cincinnati, OH  45202
(513) 357-5284
(513) 241-4551 Fax
E-mail:  kschoening@dbllaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of September, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

/s/ Kelly A. Schoening

332209v10

26