St. Elizabeth HEALTHCARE

Category: Employee Relations

TITLE: **Disciplinary Action**

NUMBER: 635.03.09

Page 1 of 8

POLICY: St. Elizabeth Healthcare will enhance and recognize associate performance and stimulate individual accountability, through securing an associate's commitment to making necessary improvement in performance.

PROCEDURE:

I. General:

A. Managers will ensure that standards are met by gaining associate commitment to the organization's mission, vision and values. The following should be emphasized during discussions with an associate:

1. Maintain or enhance self-esteem.
2. Listen and respond with empathy.
3. Ask for help in solving the problem.
4. Share thoughts, feelings, as well as rationale.
5. Provide support without removing responsibility.
6. Associate and management responsibility in maintaining confidentiality.

B. Coaching for success or improvement is an effective tool for the manager to use to enhance performance or to address declining performance, attendance or conduct problems. More than one coaching session may be appropriate before initiating disciplinary action. However, coaching is not required prior to implementing disciplinary action. (Reference Attached Guideline)

Effective Date: 9/1/77

Approved By: Marty G. Oscadal, Sr. Vice President, Human Resources

Authorized By: Joseph W. Gross, President and CEO

Revision Date: 2/25/2010

EXHIBIT NO. 1
AMS DEPO
513-941-9464

BL000238

| Disciplinary Action | 635.03.09 | Page 2 of 8 |

The steps involved in coaching an associate include:

1. Establishing the purpose of the discussion and its importance.
2. Discussing and clarifying details about the situation.
3. Agreeing on what needs to be accomplished.
4. Discussing alternatives for achieving success.
5. Securing agreement on specific action(s) to be taken.
6. Expressing confidence and setting a follow-up date.

Documentation of the coaching session should be maintained in the department file. Use of a Discussion Planner is recommended.

**EAP Referral**

C. At anytime during the discipline process, a Referral to the Employee Assistance Program (EAP) can be made to assist the associate with any personal issues, which may be impacting job performance/team performance, or other behavioral issues. The referral process can occur in two ways: (Associates may self refer themselves at any time)

1. **Supervisory Suggestion (Non-job Contingent)** – a supervisor can remind an associate of their EAP benefits. This is still considered a self-referral, but helpful for the supervisor to document in their own notes that they suggested that the associate contact EAP.
2. **Mandatory Supervisory Referral (Job Contingent)** - based on job performance/behavioral issues supervisor completes the referral form, meets with the associate reviews job performance/behavioral issues, advises the associate that they are being referred to EAP and informs him/her that he/she contact EAP to schedule an appointment. The supervisor indicates on the referral form a date to call by for monitoring purposes. The supervisor should remind the associate that contact with the EAP is confidential and the only information the supervisor will be entitled to know without a release of information is compliance only.

- Manager is to notify HR Advisor and EAP of supervisory referral being made.
- Manager completes the Supervisory Referral Form which is then forwarded to the HR Advisor responsible for the department prior to sending to EAP and associate's scheduling an appointment.
- The information provided on the referral form should be thoroughly discussed with the associate in advance of forwarding the referral form to HR then EAP.
- It is expected that the associate contact the EAP, schedule an appointment and comply with the care plan.
- Re-assure the associate of the confidential nature of the EAP counseling sessions with the noted exceptions: (1) that the supervisor will be advised when the appointment is made and kept, and the compliance status of the care plan; and (2) if the associate files a corporate compliance complaint against their supervisor, Employee Health, and/or Human Resources alleging improper management of the disciplinary action process, the corporate compliance

2

**BL000239**

| Disciplinary Action | 635.03.09 | Page 3 of 8 |
|---|---|---|

officer will be permitted access to the associates' employment information as appropriate to the completion of the investigation.

D. If an associate receives either a Level II or Level III counseling they are not eligible for the Gainsharing payout for the calendar year in which the incident occurred.

E. Disciplinary Actions

1. Level I-Counseling

    a. Application

    The Level I Counseling is the initial step in the discipline process. It is used either when an associate does not respond to coaching or when the seriousness of the performance, conduct, and/or attendance infraction warrants this level of action.

    During the counseling, the manager should emphasize the following steps for improving performance, conduct and/or attendance:

    1. Describe in detail the poor work habit observed.
    2. Indicate why it concerns you.
    3. Ask for reasons and listen openly to the explanation.
    4. Indicate that the situation must be changed and ask for ideas for solving the problem.
    5. Discuss each idea and offer your help.
    6. Agree on specific action to be taken and set a specific follow-up date.
    7. Outline consequences to the associate for failing to improve and maintain an acceptable standard of performance, conduct and/or attendance.

    b. Documentation

    This counseling session should be documented by placing a summary of the session in the departmental file. The associate should be given a copy. The Discussion Planner may be used for this purpose.

    The supervisory file should be reviewed by the supervisor every two (2) years to evaluate the appropriateness of the documents. Prior coaching and/or Level I counselings, which did not necessitate further escalation of discipline should be evaluated for purging.

BL000240

| Disciplinary Action | 635.03.09 | Page 4 of 8 |
|---|---|---|

    c.    Follow-up

A disciplinary action is active for the 12-month period immediately following its issuance. If the associate corrects the problem, recognition for the improvement should be given.

2. Level II-Counseling

    a.    Application

A Level II Counseling initiates the formal level in the discipline process. It is administered when either the associate fails in the commitment to improve following a Level I Counseling, or when the seriousness of the performance, conduct and/or attendance infraction warrants this level of action. (Reference Attached Guideline)

The manager should review the situation with the associate. The Level II Counseling results in a formal memorandum to the associate from the manager.

The memorandum summarizes the discussion that took place between the manager and the associate, and outlines the inappropriate conduct, unacceptable attendance and/or a performance problem, the appropriate standards/expectations and the good business reasons for them, and what the associate intends to do to correct the problem. This memorandum is to be prepared with the assistance of Human Resources and presented to the associate <u>after</u> the interview/discussion has taken place.

    b.    Documentation

A Level II Counseling is documented by placing the memorandum in the associate's employment history file in Human Resources. The associate must be given a copy of the memorandum.

    c.    Follow-up

A disciplinary action of this nature is active for the 12-month period immediately following its issuance. If an associate corrects the problem, recognition for the improvement should be given.

3. Level III-Counseling

    a.    Application

A Level III Counseling is the final formal level in the discipline process. It is given to an associate when the associate has failed in the commitment to improve following a Level II Counseling, or when the seriousness of the

| Disciplinary Action | 635.03.09 | Page 5 of 8 |

performance, conduct and/or attendance infraction warrants this level of action. (Reference Attached Guideline)

The Level III Counseling involves a discussion between the associate and the manager. The manager should make clear the extreme seriousness of the associate's situation and the requirement for a total performance commitment. The associate is given the opportunity to make a decision whether to meet the organization's expectations for their performance, conduct and attendance or to resign from employment.

The associate is expected to consider the alternatives and report back to the manager with their decision, prior to the start of the next scheduled shift, unless some other timeframe is designated by the manager. If it is the associate's decision to continue in the employment relationship, they must also provide a detailed Work Improvement Plan, within a designated timeframe outlined by the manager, for correcting the problems identified.

The associate's failure to comply will result in the termination of the associate's employment. If the associate elects to continue the employment relationship and provides a Work Improvement Plan, specific managerial notice in the form of a memorandum (which summarizes the problem, and outlines work improvement expectations, etc.,) is to be given which includes the counsel that any performance, attendance, or conduct problem requiring further disciplinary action, is likely to result in the termination of the associate's employment during the time the Level III Counseling remains active.

b. Documentation

The manager, with the assistance of Human Resources, will write a formal memorandum to the associate outlining the associate's decision, plan for and commitment to improvement. This memorandum will be put in the associate's employment history file. The associate must be given a copy of the memorandum. If it is the associate's decision to terminate the employment relationship, a letter of resignation to be effective immediately, should be submitted and accepted.

c. Follow-up

A disciplinary action of this nature is active for the 12-month period immediately following its issuance. If the associate corrects the problem, recognition for improving should be given.

5

BL000242

| Disciplinary Action | 635.03.09 | Page 6 of 8 |

4. Involuntary Resignation/Discharge

   a. Application

      An associate will be asked to resign, or be discharged when:

      1. Adequate improvement is not demonstrated or maintained after a Level III Counseling.
      2. The associate commits another performance, attendance and/or conduct infraction that would result in a formal disciplinary action while a Level III Counseling is active.
      3. An associate may (without prior coaching or counseling) be asked to resign or be discharged for serious infractions or violations of the Health System's policies and procedures.

   b. Notifications

      Prior to discharging an associate, managers must review with both their immediate supervisor and Human Resources, the circumstances of the situation, and the recommendation that an associate's employment be terminated. Human Resources will obtain the necessary administrative approval prior to discharging an associate.

   c. Documentation

      A brief written summary of the circumstances of the situation leading to the decision to terminate the employment relationship is to be prepared by the manager and submitted to the associate's employment history file.

II. Administrative Guidelines

   A. Cumulative Effect

      There are generally three areas of deficiency subject to discipline:
      - Performance
      - Conduct/Behavior
      - Attendance

      Associates may have a maximum of three Level I Counselings at any time and these must all be in separate categories. Should another problem occur in a category where there is already an active Level I Counseling, the disciplinary action will escalate to a higher level, usually a Level II Counseling. If three Level I Counselings are in effect and a problem develops in a fourth category which would have normally resulted in a Level I counseling, the disciplinary action must be escalated to a Level II counseling.

BL000243

| | | |
|---|---|---|
| Disciplinary Action | 635.03.09 | Page 7 of 8 |

The maximum number of Level II Counselings that may be active at one time is two; these also must be in separate categories. Should another problem occur in a category where there is already an active Level II Counseling, the disciplinary action must escalate to a higher level, usually a Level III Counseling. If two Level II Counselings are in effect and a problem develops in a third category, which normally would have resulted in a Level II counseling, the disciplinary action must be escalated to a Level III Counseling.

Because the Level III Counseling requires a total commitment on the part of an associate, there may only be one active Level III Counseling in effect at a time. If the employment of an associate is <u>not</u> terminated after committing a significant infraction while under an active Level III Counseling, the decision must be documented and approved by the manager who implemented the original Level III Counseling, or another appropriate level of management, in conjunction with Human Resources.

B. Administrative Suspensions

An administrative suspension may be used to remove the associate from the workplace while the manager investigates the circumstances of a situation. Some examples include theft, fighting, insubordination, patient abuse/neglect, etc. An administrative suspension can be invoked in conjunction with a Level III Counseling. Associates who are placed on administrative suspension will be paid available PTO. Should termination (resignation/discharge) result, the termination will be made effective with the last day worked.

C. At any point in the process, managers are encouraged to contact the Human Resources Department for assistance in administering this policy.

D. This policy does not alter existing appeals procedures for associates.

E. This policy is not intended or implied as a contract.

F. Co-ops, temporary associates and associates in their initial period of adjustment are excluded from this policy. If coaching is not sufficient for these associates, and formal discipline is required, they may be asked to resign or be discharged.

G. The Health System does not have the obligation to use these steps and may, at its discretions, omit steps during the course of investigation and ensuing discipline.

H. The attached disciplinary guidelines are intended as guidelines only and are not inclusive of every infraction. The Health System reserves the right to determine the level of discipline depending on the circumstances/severity of the infraction.

BL000244

| Disciplinary Action | 635.03.09 | Page 8 of 8 |
|---|---|---|

III. Modifications and Exceptions

St. Elizabeth Healthcare reserves the right to modify this policy and procedure at any time. Any exception must have the approval of the President/CEO or designee and must be coordinated through the Human Resources Department.

GUIDELINES FOR DETERMINING APPROPRIATE
LEVEL OF DISCIPLINE

L-I - Level I Counseling
L-II - Level II Counseling
L-III - Level III Counseling
D - Discharge

## Guidelines for Determining Appropriate Action

| ST. ELIZABETH HEALTHCARE ACTION | First Offense | Second Offense | Third Offense |
|---|---|---|---|
| Falsification of Health System records, including employment or time records | D | | |
| Fighting on Health System premises or on work time. | D | | |
| Physical mistreatment or abuse of a patient, visitor or another associate. | D | | |
| Absence, without notification, from two consecutive Workdays per periods. (No call, no show) | D | | |
| Deliberately creating gross, unsafe or unsanitary conditions on Health System premises. | D | | |
| Willful neglect of duty | D | | |
| Negligent or deliberate damage to or misuse of, theft of, or Unauthorized removal of the property of the Health System, Patients, visitors, or of another associate | D | | |
| Illegal or immoral conduct or acting in an indecent manner. | D | | |
| Drunkenness or use of alcoholic beverages on Medical Center premises or on work time including hospital sponsored travel unless authorized by the medical center | D | | |
| Unauthorized sale, use, possession, or disposal of drugs or hallucinogens. | D | | |
| Refusal to submit to a Fitness for Duty evaluation or a drug/alcohol screen. | D | | |
| Willful disobedience, insubordination, or intentional failure or refusal to carry out any reasonable order or job assignment. | D | | |
| Dishonesty, deception or fraud. | D | | |
| The obtainment of STD, LTD or Workers' Compensation through fraud. | D | | |
| Carrying concealed weapons of a dangerous nature, violation of other penal laws, or acting in an illegal manner on Health System premises. | D | | |
| Trespassing on Health System premises or permitting unauthorized persons in any area of the Health System. | D | | |

BL000246

| | | | |
|---|---|---|---|
| Trespassing on Health System premises or permitting unauthorized persons in any area of the Health System. | D | | |
| Repeating or revealing confidential patient (Protected Health Information/PHI) or Medical Center information to unauthorized individuals. | D | | |
| Leaving work area prior to end of shift without permission of immediate supervisor. | L-III | D | |
| Violation of fire or safety rules including pranks or practical jokes. | L-III | D | |
| Failure to report any known accident to supervisor. | L-III | D | |
| Intimidation or coercion of other associates including making verbal threats, intimidation of co-workers, uncontrolled anger. | L-III | D | |
| Unauthorized sleeping on work time.  | L-III | D | |
| Failure to comply with the specific rules of the department in which employed and with those of other department with which work must be coordinated. | L-III | D | |
| Unauthorized posting or removal of any notices on bulletin boards or Medical Center property at any time. | L-III | D | |
| Loafing on the job, improper job performance, poor attitude, and/or lacking a spirit of cooperation. | L-II | L-III | D |
| Verbal mistreatment or abuse of a patient, visitor, or another associate including but not inclusive of profanity, disrespect or lack of customer service skills. | L-II | L-III | D |
| Unauthorized distribution or circulation of literature, or written or printed matter of any description, including e-mails, on Medical Center premises. | L-II | L-III | D |
| Failure to properly record time worked. | L-II | L-III | D |
| Accessing Protected Health Information (PHI) inappropriately, but not sharing the data. | L-II | L-III | D |
| Engaging in personal work on work time. | L-II | L-III | D |
| Intentional waste of material or abuse of equipment or other Medical Center property. | L-II | L-III | D |
| Entering unauthorized areas of the Medical Center without specific prior approval of the department head. | L-II | L-III | D |
| Habitual carelessness or recklessness. | L-II | L-III | D |
| Habitual tardiness or absenteeism. | L-I | L-II | L-III |
| Improper attire or reporting to work without proper uniform. | L-I | L-II | L-III |
| Unauthorized overtime without approval of immediate supervisor or department head. | L-I | L-II | L-III |
| Smoking in prohibited areas. | L-I | L-II | L-III |

10

BL000247

| | | | |
|---|---|---|---|
| Exceeding 30 minute meal period or 10 minute break time when granted. | L-I | L-II | L-III |
| Parking violations. | Verbal Counseling | L-I | L-II |
| Use of any video or audio recording devices, including but not limited to tape recorders, video cameras, still cameras including cell phone cameras, without prior consent of all parties involved. | L-III | D | |
| Failure to meet an established standard of performance including established customer service/patient satisfaction standards of performance. | L-I | L-II | L-III |
| Failure to follow communication performance standards with customers, patients, visitors and/or associates, whether in person or on the telephone. This includes inappropriate or excessive personal cell phone usage in work areas and during work hours. | L-I | L-II | L-III |
| Discussing any information on social sites that pertains to medical condition, performance, or personal affairs of patients, residents, clients, or other associates. Discussing any company-sensitive matters regarding proprietary, confidential or privileged information such as workforce restructuring, position elimination, strategic decisions, or other announcements deemed inappropriate for public dissemination. | L-I | L-II | L-III |

11

BL000248



# MEMO

**TO:** Bob Lehman

**FROM:** Doug Chambers
Sr. Vice President, Facilities

**DATE:** October 12, 2010

**SUBJECT:** Dispute Resolution



Thank you for meeting with me to review your termination of employment for sleeping on duty and failing to enforce the discipline policy as a supervisor. I understand you met with your immediate supervisor, Mike Kraft, Director of Security and Safety. I have read the memorandum dated October 4, 2010, by Mike Kraft in reference to your meeting and agree with everything in the document.

You admitted to sleeping on the job. You stated that you believed it was fatigue and medically related, but there is no medical condition to substantiate your claim. You shared there were others that were sleeping in the past and you discussed it with them but failed to discipline them. You failed to enforce our policy as a supervisor.

You believe that after thirty four years, you have earned another chance. You jeopardized the safety of our patients, visitors and staff while sleeping on duty and failed to enforce the policy with others.

I asked you if there was anything else you could share that would change the facts. You did not provide any new information. I am upholding the termination of employment.

Chambers
EXHIBIT NO. 2
AMS DEPO
513-941-9464

BL000044