# MEMORANDUM

TO:     Doug Chambers
        Senior Vice President, Facilities

FROM:   Mike Kraft
        Director, Security/Safety

DATE:   September 14, 2010

SUBJECT: Timeline on Sleeping Complaint

### 8/19/10

- Received an email from Roxann Platek and within the email it was noted by Ken Rasor that Bob Lehman sleeps in the office

- Spoke with Kim and she confirmed that on several occasions Ken has pointed out to her that Bob has fallen asleep. She only observed Bob for a brief moment and could only recall a couple of times that this occurred.

- I sent an email Roxann, Lisa Blank, and Doug Chambers informing them of my discussion with Kim

### 8/20/10

- I spoke to Bob Lehman and advised him that I had received a complaint that he had fallen asleep on duty. His response was that unfortunately this had occurred on several occasions. He further stated that he believed that this occurred as a result of his Diabetes and the spiking of his blood sugar. I informed him that sleeping was a violation of policy and that I believed he would probably receive a Level I discipline, but that I would need to speak with HR.

- I phoned Roxann and advised her of Bob's admission and his statement that he believed the problem was medical in nature. Roxann was not sure what effect this would have on the discipline and stated she would call me back.

- Roxann called me back and informed me that according to Lisa Blank, Bob would be receiving a Level III discipline for his admission of sleeping on the job. In addition, Bob would need to report to Employee Health for a Fitness for Duty exam, due to his statement about his medical condition.

Kraft
EXHIBIT NO. 6
AMS DEPO
513-941-9464

SEMC 1043

- I responded to Doug Chambers office and spoke of my disappointment and and concern over how the situation was being handled. I was upset that a loyal employee with no discipline would receive a Level III immediately.

- After leaving Doug's office, I responded to HR and spoke to Roxann and Lisa about the situation. I was still upset about the situation and did vent on them; to which I ultimately apologized to both for doing. Both Roxann and Lisa said there was no need for an apology and stated that they just felt I was a Director who cared about his people.

\*\* Lisa informed me that she had set up an appointment with Gerald Hynko for Bob's Fitness for Duty and that I was to inform him of the Level III and his requirement to respond to Employee Health. I was also to inform him that the Fitness for Duty had no bearing on the discipline and that he would be receiving the Level III regardless of the outcome of the Fitness for Duty.

- I returned to my office and summoned Bob Lehman. While in my office, I informed him that sleeping on duty was a Level III discipline and that he would also be required to submit to a Fitness for Duty evaluation. Bob was upset and requested to speak to Lisa Blank. He also stated that he wanted to file a Grievance. I phoned Lisa and informed her of Bob's request, to which she stated we could respond to her office immediately. I asked Bob if he wanted me to respond with him and his response was yes he wanted me there as a witness.

\*\* I had already informed Bob of the discipline and the Fitness for Duty, at which time he requested to speak to Lisa Blank in her capacity as an HR representative. Bob had requested that I join him as a witness. Because of this fact, I felt that the conversation was between Bob and HR and that it was not my place to intervene.

- Both Bob and I responded to Lisa Blank's office where Bob informed Lisa that he felt the discipline was unfair and that he wanted to file a Grievance. Bob also inquired of Lisa about the need for a Fitness for Duty if it had no bearing on his Level III discipline. Lisa informed him that he could not file a Grievance at this time and that if he did not submit to a Fitness for Duty evaluation he would be terminated. Bob also spoke about his concern that a Level III discipline would keep him from being promoted, to which Lisa responded that was not the case and that it was up to me as the Director whether or not I promoted Bob. There was also some discussion about Bob's loyalty and work record; as well as the issues currently going on with Ken Rasor.

- Bob and I left Lisa's office and returned to the Security Department. I attempted to contact Gerald Hynko, without success. Bob finished his shift and I advised him to report to work on Monday.

- Later in the afternoon I spoke to Gerald and he informed me to bring Bob to his office first thing Monday morning.

- I called Lisa to inform her what had happened and she advised me that I should have called Mary Morris because she was waiting for us. This was the first time I had heard Mary's name.

## 8/23/10

- When I arrived at work on Monday morning, I contacted Gerald Hynko and confirmed that Bob and I could respond to his office. We both responded and Gerald explained the process and I was asked to leave due to the medical issues.

- Sometime later in the morning, Bob returned to my office and informed me of what was happening. I then sent him home until further notice.

## Questions for Meeting on 10/4

1. Are you aware of what the complaint is against you?

2. Do you understand that sleeping is a violation of St. Elizabeth Disciplinary Policy 635.03?

3. Did you admit to falling asleep multiple times while on duty for St. Elizabeth?

4. How many times did you fall asleep and for how long a period of time were you sleeping?

Kraft
EXHIBIT NO. 7
AMS DEPO
513-941-9464

SEMC 1035

5. Did you shut the door when you fell asleep?

6. Did you report to your supervisor that you were having problems of any type that were making you fall asleep?

7. Did you make a statement that you had seen Charlie and Mike sleeping in the past?

8. When did you see this happen?

SEMC 1036

9. As a supervisor, what action did you take when you observed Charlie and Mike sleeping?

10. In reference to finding Mike and Charlie sleeping, did you make the statement to Lisa Blank that "it's a human thing and I have the discretion to act on it or not"?

11. Why do you feel like your termination was wrongful, excessive, and unsubstantiated?

12. How do you want your name cleared and what conclusion are you looking for in this matter?

# MEMORANDUM

TO: Bob Lehman

FROM: Mike Kraft
Director, Security/Safety

DATE: October 4, 2010

SUBJECT: Dispute Resolution

Thank you for your time to discuss your thoughts in reference to your termination of employment for sleeping on duty and failing to enforce the discipline policy as a supervisor. In the meeting, you stated that you felt the termination was unfair and excessive and were willing to accept a Level III. As for the sleeping on duty, it is your belief that it was a medical condition that was causing this to occur. In reference to the accusation that you did not do your job as a supervisor, you stated that one incident occurred many years ago and you felt as though you had done your job in an appropriate manner at the time.

In response to questions that I asked you, you stated that you had fallen asleep for brief periods of time; however you did not know how many times it had occurred. You further stated that when it occurred you were either on break or at lunch. You also indicated that you had not seen the medical report from your fitness for duty; however it was explained to you that there was no medical reason found to justify sleeping on duty.

Disciplinary Policy 635.03.09 has guidelines for disciplinary action. While the guidelines for "unauthorized sleeping on work time" recommend a Level III discipline, paragraph H of the policy states, "The attached disciplinary guidelines are intended as guidelines only and are not inclusive of every infraction. The Health System reserves the right to determine the level of discipline depending on the circumstances/severity of the infraction."

The investigation determined that you were sleeping while on duty and not all times you were sleeping were you on lunch or break times. Further, you admitted that you found staff sleeping but did not discipline them in accordance with Disciplinary Policy 635.03.09. As a supervisor, you are required to be aware of the policies and enforce them. Additionally, you are required to follow the policies and set an example. It is the responsibility of you and your staff to ensure the safety of St. Elizabeth staff, visitors and patients and you jeopardized the safety of others when you and your staff were not attentive to the surroundings. Your conduct in not following the policies yourself and not enforcing the policies is cause for termination of employment.

Therefore, I find that St. Elizabeth was within their rights and did follow the disciplinary policy. I am upholding the termination of employment.

Kraft
EXHIBIT NO. 5
AMS DEPO
513-941-9464

BL000038