UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | | |
|---|---|---|
| ROBERT LEHMAN | : | Case No. 2:11-cv-00165 |
| | : | J. Bertelsman |
| Plaintiff, | : | Mag. J. Wehrman |
| | : | |
| vs. | : | |
| | : | |
| ST. ELIZABETH HEALTHCARE | : | **AFFIDAVIT OF KATHERINE** |
| | : | **DAUGHTREY NEFF** |
| Defendant. | : | |
| | : | |

I, Katherine Daughtrey Neff first being duly cautioned and sworn do aver as follows:

1. I represent Plaintiff, Robert Lehman, in his suit against Defendant, St. Elizabeth Healthcare, and have personal knowledge of the information contained in this Affidavit.

2. In complying with the Magistrate's Order entered on August 17, 2012 (Doc. #15), Defendant provided supplemental discovery responses identifying a non-disabled nurse, hired by St. Elizabeth on December 3, 2001, who received a Level 3 disciplinary action on or about September 8, 2009 for sleeping on the job.

3. These performance related documents are attached hereto as Exhibit 1. The documents demonstrate that the non-disabled nurse had attendance issues leading up to and following the Level 3 disciplinary action. The non-disabled nurse also received Level 1 discipline in January 2009 for refusing a reasonable assignment, which according to St. Elizabeth's policies should result in Level 3 discipline.

Further Affiant Sayeth Naught.

_____
Katherine Daughtrey Neff

STATE OF OHIO          )
                       ) ss:
COUNTY OF HAMILTON     )

Sworn to me before and subscribed herein this 19th day of October 2012.

_____
ANN KOIZE WITTENAUER
Attorney at Law
Notary Public, State of O___
My Commission Has No Exp___
Section 147.03 R.C.

**Shauna Dynes**

**From:** Jane Swaim
**Sent:** Wednesday, November 11, 2009 10:45 PM
**To:** Kim Boyer; Shauna Dynes; Susan McDonald; Theresa Vietor
**Cc:** Lisa Blank
**Subject:** Fwd: Dispute Resolution
**Attachments:** Dispute Resolution ▇▇▇ 11-11-09.doc

**messagingarchitects:MAID:**
4AFB3E71.SEMCGW.CCare.100.16F3879.1.24C41.1

Confidential.......

fyi to all...my response to the ▇▇▇ grievance. Shauna, I think you received my grievance response earlier today. I would be interested in hearing her response. Give me a call when you get a chance.

In my investigation, I spoke with Terry Foster, Lee Smith, and Kim Morgan. All confirmed that ▇▇▇ has slept on the job and on the nights in question.

I think Lee Smith is a bit anxious having to work side by side with her and being asked questions by her almost nightly. I told her to just tell her she did not want to discuss it with her, that it was inappropriate for her to ask her about this, and to please not ask her about it again. Of note, she said that ▇▇▇ had asked her, she believes the night before ▇▇▇ was scheduled to meet with me, to write a letter for her saying she does not sleep on the job. Lee said she told her she would feel uncomfortable doing that. I congratulated her on her response and action. I also told her I would not use her name specifically in my response to ▇▇▇'s grievance. She seemed very relieved and said thank you. She feels she is in a difficult situation, it is clear and we need to keep this in mind when we have discussions with ▇▇▇ about our investigation. I think she is planning to talk with you Terri at some point soon, mostly for support and just to talk.

>>> Carolyn Calvert 11/11/2009 2:26 pm >>>
Attached is the dispute resolution you have been expecting from Jane.

Carolyn Calvert
Administrative Secretary
St. Elizabeth Healthcare - Edgewood
1 Medical Village Drive
Edgewood, Ky. 41017
ccalvert@stelizabeth.com
Phone: 859-301-2280
Fax: 859-301-7845

<<Dispute Resolution ▇▇▇ 11-11-09.doc>>

**EXHIBIT 1**
**to**
**Neff Affidavit**

**CONFIDENTIAL**

1

SEMC 1047

Dispute Resolution
 R.N.
11/11/09

This is in response to your appeal of your Level III counseling for reportedly sleeping while on duty on two occasions (September 4 & 8). You and I met along with Shauna Dynes, Human Resources Advisor on 11/5/09. I have reviewed all pertinent information known to be available to me on your grievance dispute investigation.

When we met, you were adamant that the person who reported you were found asleep on two occasions was not telling the truth for some unknown reason. You said he must have misinterpreted what he saw. You talked about being short and positioning your chair low to the floor routinely and that indeed you frequently wrap blankets around you while sitting in this chair at the desk due to being cold. You said you did indicate that if asked, your peers/coworkers might say you have "nodded off" at times but you said you had never gone to sleep on duty and have never put your head down on the desk on a blanket and gone to sleep while on duty.

Based on my findings, you have indeed been seen sleeping on duty – more than just "nodding off" – when you had patients you were supposed to be caring for. You have also been seen "nodding off" on several occasions. When seen sleeping, you did not awaken readily for several minutes even with activity in the department.

Patients entrust their care to us. It is not possible to be their advocate in the Clinical Decision Unit, a cardiac E.D., when you are not alert – i.e., "nodding off" and sleeping. You were supposed to be caring for one patient on September 4 and 5 patients on September 8. Sleeping on the job, even if for a few minutes, puts patients at risk, as well as other co-workers. It presents a negative image of nursing overall. The role of a Registered Nurse is to be a patient advocate (which can't be done while "nodding off" or asleep) and also to be a role model for staff you work with or supervise. The Health System's disciplinary policy is very clear about this.

I suggest you make arrangements to get adequate rest so you will not fall asleep at work or if there are other issues, that you seek resolution of them. Patients deserve your full attention while at work and this is what is expected. I would also suggest you dress more warmly, perhaps in layers, so that you do not "wrap yourself in blankets" while on duty due to the image it creates.

I am upholding the Level III disciplinary action given to you ▇▇▇ based on my findings.

I am sure you will be making every attempt to correct this situation immediately.

Jane Swaim,
Sr. Vice President/Chief Nursing Officer

**CONFIDENTIAL**

SEMC 1048

## ST. ELIZABETH HEALTHCARE

Fort Thomas                                                    Florence

Covington                                                      Edgewood

Williamstown                                                   Falmouth

## MEMORANDUM

**TO:**    ███████████, Registered Nurse

**FROM:**  Theresa Vietor, Nurse Manager - Edgewood Emergency

**DATE:**  September 28, 2009

**SUBJECT: LEVEL III COUNSELING/FINAL NOTICE - Unauthorized Sleeping on Work Time.**

This Level III Counseling for unauthorized sleeping on work time is being issued to you for the following incident that occurred on work time. You were observed sleeping during your scheduled shift on September 4, 2009 and again on September 8, 2009. Witnesses stated that you were seen sleeping at the desk with a blanket on and slumped onto the desk.

The Medical Center's Disciplinary Action Policy outlines a Level III Counseling as the appropriate disciplinary action for willful or negligent inattention to duties and unauthorized sleeping during work time. As a result of this level III counseling, you are expected to complete a work improvement plan on how you plan to correct this behavior.

███████, situations such as this cannot continue and will not be tolerated. Sleeping during work time threatens patient safety and can potentially cause a detrimental outcome.

You are further counseled that, consistent with the Medical Center's Disciplinary policy, once a Level III Counseling is incurred, another disciplinary action within a 12-month period, will result in the termination of your employment.

As outlined in the Medical Center's gainsharing program policy, this disciplinary action will prevent you from participating in the employee gainsharing program for this plan year (2009).



SEMC 1049

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  September 28, 2009
Registered Nurse  Page 2 of 2

The Medical Center's Associate Dispute Resolution Procedure provides for the review of disciplinary action if the appeal is submitted timely. Should you wish to avail yourself to this process, you have 5 days from the date of discipline issue to submit your appeal in writing to Human Resources.

The Medical Center has a reputation for providing quality patient care and it is the responsibility of each one of us to do our part to maintain this reputation. Our expectations of your performance, as outlined, in this Level III Counseling, are the same expectations we have of all other employees.

Loretta, we have confidence that you will be able to meet the expectations outlined in this Level III Counseling. However, further issues of this nature will not be tolerated and will result in further disciplinary action up to and including the termination of your employment. We thank you in advance for your efforts in resolving this matter.

_____    _____
Supervisor                         Date


_____    _____
Associate                          Date


cc: Human Resources - Associate History File

SD-LIII.Sleep.▇▇▇▇▇▇▇.09.28.09.doc

**CONFIDENTIAL**

SEMC 1050

[redacted]
July 24, 2008
Coaching Session

[redacted] has been very concerned about making sure that she is receiving breaks and rightly so. I have supported [redacted] in her contention that she receive a break when possible. In response to this, the staff is making every effort to provide her with two 15 minute breaks and she is relieved by the staff when the blue side closes at 1:30am whenever possible. This has been challenging at times and [redacted] has expressed the fact that she is upset when she does not receive breaks.

I spoke to Lisa Blank regarding this issue and she told me that the practice needs to be to insure that every employee receives breaks per policy. However, in the emergency setting, there may be times when patient care is compromised and must come first. It is important that this is the exception, not the rule. It does appear by [redacted]'s timecard that she did not receive a lunch on 2 occasions since May. Otherwise, a 30 minute lunch is evident by her timecard.

Recently I have had complaints that [redacted] is taking longer than 15 minute breaks when they are provided. On 7/23, she was relieved for her first break by the ANM; she did receive her 30 minute lunch break after the blue side closed. It was reported that she did not return from break for > 20 minutes. Additionally, it was reported that she has taken other breaks that were 30 minutes long in addition to her 30 minute lunch break. ED staff were covering the CDU each of these times and short staffed on 7/23.

I absolutely support [redacted] in her right to have breaks and lunches whenever patient care permits. It is critical however, that she keep those breaks limited to the timeframe permitted by policy for the sake of patient care.

CONFIDENTIAL

## DISCUSSION PLANNER

Associate Name: ███████████████  Date: __2/27/08__

Job Title: __RN_____  Supervisor's Name __Theresa Vietor RN__
This conversation is intended to be:
__XX__ Coaching Session
_____ Level I Counseling  _____ Other _____

1. Brief description of the situation:
   a. Tardy 3 times since July 2007

2. Desired performance: Policy #630.01.12 calls for a Level I on the 4th tardy for an employee working and average of 4 days a week.

3. Actual performance: This employee was tardy on the following dates within the last rolling year:
   a. DATES of occurrences: 7/23; 1/31/ 2/15/2008

4. Impact / business reason why the associate must correct this situation:
   __Proper staffing is critical to patient care and patient safety.__

5. Associate issues or comments relating to the situation:
   _____
   _____

6. Dates of previous related discussion (s): _____

7. Is the associate currently in an active level of discipline? ___ Yes ___ No

   ___Level I Counselling  ___Level II Counselling  ___ Level III Counselling
   issued on _____ for _____

8. Associate's Action Plan – The associate is committed to correct the situation by doing _____

9. Consequences to the associate for failing to improve to an acceptable level:
   Any further occurrences prior to 7/23/2008 will result in a Level I and escalating discipline.

10. Additional Comments: _____

Supervisor's signature: _Theresa Vietor_  Date: __2/29/08__
Associate's signature: ███████████████  Date: __2/29/08__

CONFIDENTIAL

SEMC 1089

**Level 1 Disciplinary Action: Refusal to Accept Reasonable Assignment**
**January 26, 2009**
**Employee:** ▮▮▮▮▮ RN

**Situation:**

I received a call from Jay Ward RN, ANM on the evening of 1/14/09 related to issues with the large number of admissions that the emergency department was holding. He informed me that the diversion that I had requested earlier in the evening was approved from 6p – 8pm due to the lack of inpatient beds at the South Unit. Additionally, the inpatient units had provided nursing care for 6 patients that we had moved back to the area around the CDU and intended to send additional nurses for night shift. Due to cancellations, they were unable to send the additional staff. The supervisor was able to move all but 2 patients from the CDU – a medical surgical tele patient and a TCU patient with a complaint of chest pain. There were also two chest pain observation (actual CDU) patients in the unit. I instructed Jay to have the CDU nurse care for these four patients for the night and if all were stable, to possibly move one more non – acute patient to the CDU area if necessary. The normal nurse patient ratio for the CDU is 5 patients :1 nurse. Additionally, I asked Jay to make sure that the supervisors sent the float clerical to help our clerical in the CDU who may be unfamiliar with all the inpatient orders.

Shortly after this conversation with Jay, he called me again to relay that ▮▮▮▮▮ was refusing to take care of any of the TCU patients. (See attached memo from Jay). I contacted the house supervisor who confirmed that there were no inpatient beds; but she did have one bed that she could place one of the CDU patients in on the floor. I then called ▮▮▮▮▮ and told her that it was necessary for her to keep inpatients in the CDU. She stated that she did not feel qualified to care for a TCU patient – that she had not worked on TCU for 3 years. I informed her that the patients she had were not of any higher acuity than the patients she cared for in the CDU. I told her she could either keep the inpatient she had; or take some of the admissions waiting in the ED to open up ED beds – insuring that the patients were not of an acuity she was not familiar with. I also informed her that if necessary, I felt they would need to go up to a 5:1 nurse patient ratio. ▮▮▮▮▮ told me that I had said we did not want the CDU to return to the concept of the admission unit. I told her that she was correct that it was important that we keep that area open for the clinical decision patients. However, the hospital was in a crisis situation with overcrowding and EVERYONE was doing their part to assist in the care of these admissions. I told her that I did not feel that any of the patients that we asked her to care for were outside of her level of competency.

She stated "Fine, but I am telling you that I am not comfortable with the care of these patients."

▮▮▮▮▮ was hired in 2002 as a nurse and worked on TCU B until she took a position in the "Admissions Unit" off of the ED in 2005. ▮▮▮▮▮ cared for TCU and med surg patients in the admissions unit for hours after the decision to admit as an inpatient until July of 2007 when the Admissions Unit converted to a chest pain "Clinical Decision Unit". She completed her MID competencies each year as a TCU and / or CDU nurse. She took telemetry training. Her evaluations have been satisfactory throughout her

CONFIDENTIAL

employment. I have no reason to believe that ▆▆▆ is not competent to take care of the patients assigned to her.

**ISSUE:**
▆▆▆'s behavior gives rise to concern in several respects:
1. Her response to the ANM responsible for the department at the time demonstrated insubordination and disrespect.
2. ▆▆▆'s behavior demonstrated a lack of teamwork in addressing a critical patient care situation.
3. ▆▆▆'s behavior demonstrated lack of concern for the patients involved.

Finally, had Jay not called me and requested that I speak to ▆▆▆, she was refusing a reasonable assignment (**Policy # 635 0308**). Policy # 6350308 Refusal to Accept a Reasonable Assignment calls for the employee to receive a Level III discipline up to and including termination. ▆▆▆ did ultimately accept the assignment, but her behavior was disrespectful to the ANM and clearly lacked concern for our patients. After reviewing the situation with Human Resources is has been decided to issue ▆▆▆ a Level 1 verbal warning at this time for:
Disrespectful behavior
Behavior that demonstrates lack of teamwork and concern for patients.
Initial refusal to accept a reasonable assignment.

**CONSEQUENCES:**
Any further behavior that demonstrates a lack of respect for coworkers or management or lack of teamwork will result in a Level II and escalating discipline. If ▆▆▆ refuses to accept a reasonable assignment at any time; she will be sent home and the situation will be evaluated for disciplinary action including termination of employment.

_____    _____  2/4/09
Employee Signature              Manager Signature      Date

CONFIDENTIAL

SEMC 1091

## DISCUSSION PLANNER

**Associate Name:** ▓▓▓▓▓▓▓▓▓▓   **Date:** 9/29/08

**Job Title:** RN   **Supervisor's Name** Theresa Vietor RN

This conversation is intended to be:

☐ **Coaching Session**
☒ **Level I Counseling**   Other:

1. Brief description of the situation: ▓▓▓ has been absent 3 times since January 1, 09 and one was a no call no show.

2. Desired performance: ▓▓▓ is expected to arrive at work on time and on scheduled days.

3. Actual performance: ▓▓▓ accumulated 4 points in attendance and will receive a level 2 when she acquires 5 points. ▓▓▓ was absent on 1/28, 8/14, and 9/14 with non-fmla occurrences and tardy on 1/14/09.

4. Impact / business reason why the associate must correct this situation: Patient care and patient safety is compromised unless the department is appropriately staffed.

5. Associate issues or comments relating to the situation:
Jan 14 - late d/t snow   Jan 28 - Electric line over driveway - could not get out
Aug 14 - mother taken to ER Admitted to ICU
Sep 14 - At mothers - taken caregiver

6. Dates of previous related discussion (s): _____

7. Is the associate currently in an active level of discipline?  ☐ Yes  ☒ No

   ___ Level I Counselling  ___ Level II Counselling  ___ Level III Counselling
   issued on _____ for _____

8. Associate's Action Plan – The associate is committed to correct the situation by doing _____

9. Consequences to the associate for failing to improve to an acceptable level:

   Any further tardiness or non-FMLA absences prior to 9/14/10 totaling 5 points will result in a Level 2 and escalating discipline. Gainsharing opportunities are lost with a Level II.

10. Additional Comments: _____

**Supervisor's signature:** Theresa Vietor   **Date:** 10/2/09
**Associate's signature:** ▓▓▓▓▓▓▓▓▓▓   **Date:** 10/7/09

CONFIDENTIAL

SEMC 1080

## DISCUSSION PLANNER

Associate Name: ███████████████   Date: 10/20/09

Job Title: __RN__   Supervisor's Name __Theresa Vietor RN__

This conversation is intended to be:
___ Coaching Session
_x_ Level I Counseling   ___ Other _____

1. Brief description of the situation: Loretta copied private patient information from the CDU and took them home. This is a violation of patient privacy and confidentiality.
2. Desired performance: Private patient information is never to be taken home.
3. Impact / business reason why the associate must correct this situation: The potential for a violation of the patient's privacy exist when records are removed and could impact the patient and the organization negatively.
4. Associate issues or comments relating to the situation:
   _____
   _____

5. Dates of previous related discussion (s): Loretta took the records home in preparation for her Level III grievance process

6. Is the associate currently in an active level of discipline? _X_ Yes ___ No

   _x_ Level I Counselling  ___ Level II Counselling  ___ Level III Counselling
   issued on _____ for __attendance.__ _____

7. Associate's Action Plan – The associate is committed to correct the situation by doing _____

8. Consequences to the associate for failing to improve to an acceptable level: Any further occurrences in which patient confidentiality or privacy is compromised in any manner will result in a Level II and escalating discipline.

9. Additional Comments: _____

Supervisor's signature: ███████████████████   Date: _____

Associate's signature: ███████████████████   Date: 10-22-09


CONFIDENTIAL

SEMC 1081