UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

| | |
|---|---|
| ROBERT LEHMAN ) | |
| ) | Case No.: 2:11-CV-165-WOB/JGW |
| Plaintiff ) | |
| ) | **ELECTRONICALLY FILED** |
| ) | |
| ) | **REPLY IN SUPPORT** |
| ) | **OF MOTION FOR SUMMARY** |
| vs. ) | **JUDGMENT OF** |
| ) | **DEFENDANT,** |
| ST. ELIZABETH MEDICAL CENTER, INC. ) | **ST. ELIZABETH** |
| ) | **MEDICAL CENTER, INC.** |
| ) | |
| Defendant ) | |

## I. INTRODUCTION

This case presents no material issues of fact. Plaintiff admitted to sleeping at work, that stated reason for termination of employment. Other employees of St. Elizabeth saw him sleeping. He created an unsafe situation and put the hospital, its patients, and visitors at risk. As a supervisor, it was his job to oversee the safety at St. Elizabeth and he could not do this if he was asleep. Plaintiff's offense was especially serious because of his position as a supervisor. It was his job to follow policies as well <u>as to enforce them</u>. Plaintiff's termination was based solely upon the fact that he slept while at work.

## II. PLAINTIFF'S CANNOT OVERCOME SUMMARY JUDGMENT ON HIS DISABILITY DISCRIMINATION CLAIM

### 1. Cannot meet *prima facie* case

#### a. Plaintiff's Alleged Disability

Plaintiff asserts in his Response that he is disabled, but this claim is based upon his diagnosis of diabetes. (Plaintiff Response p. 16) A diagnosis is insufficient to establish a disability for the purpose of the ADA. *Laws v. HealthSouth N.Ky. Rehab Hosp.*, 828

F.Supp.2d 889 (E.D.Ky.2011) (granting summary judgment to employer because plaintiff did not show she was disabled under the ADA, never requested an accommodation and worked full schedules). St. Elizabeth's argument that Plaintiff is not disabled is based upon Plaintiff's sworn testimony that he does not have limitations because of his health problems. (Plaintiff Dep. p. 77) In order for Plaintiff to be disabled as a matter of law, he must demonstrate that his impairments substantially limit him. Relying upon his sworn testimony, Plaintiff cannot make this required showing.

Plaintiff asserts in his Response that St. Elizabeth had knowledge of Plaintiff's alleged disabilities prior to Plaintiff sleeping at work but provides no evidentiary support for this allegation. (Plaintiff Response p. 18) The testimony presented in this case unequivocally establishes that decision-makers as well as those who were peripherally involved were unaware of any alleged disabilities that Plaintiff might have prior to Plaintiff sleeping on the job. (Chambers Dep. P. 44; Oscadal Dep. p. 67; Dubis pp. 52-53, 78; Blank Dep. p. 37) Chambers, Oscadal, Dubis, and Blank each testified that they had no knowledge of any medical issues prior to Plaintiff's infraction. *Id*. The sworn testimony in this case clearly demonstrates that Oscadal and Chambers, the decision-makers, had no knowledge regarding Plaintiff's medical issues prior to him being caught sleeping at work.

    **b.    Staying Awake is an Essential Function of the Security Guard Position**

Plaintiff claims that he was qualified to perform the essential functions of his security guard position. (Plaintiff Response p. 20) Plaintiff completely ignores that having the ability to stay awake was an essential function of his job. In *Medlin v. Springfield Metropolitan Housing Auth.*, 2010 WL 3065772 (Ohio App. 2010), an employee terminated from his position as a facilities manager for repeatedly sleeping at work argued that "falling asleep on the job did not affect his job performance." *Id*. at *6   The court disagreed, however, and found that staying awake was an essential job function. *Id*. at *9

2

The court held that the employee "failed to establish that he could safely and substantially perform the essential functions of his job, with or without reasonable accommodation" because he was unable to stay awake at work. *Id*. at *1  Plaintiff was unable to perform an essential function of his position as security guard because he could not stay awake at work.  Further, Plaintiff himself testified that staying awake was necessary for the performance of his position! (Plaintiff Dep. p. 77).

Lehman was well liked and worked for St. Elizabeth for many years.  The decision to terminate Plaintiff was difficult for these reasons, but necessary because of Lehman's infraction and his position as a security supervisor.  (Dubis Dep. p. 64; Chambers Dep. p. 49)  He neglected the responsibilities of his position by sleeping at work. (Dubis Dep. p. 64)  Plaintiff claims that he was meeting all of his performance expectations at the time of his termination (Plaintiff Response p. 20), but this is entirely untrue.  By sleeping on the job, Plaintiff did not fulfill the expectations and requirements of his position as Security Supervisor.  (Dubis Dep. p. 64; Chambers Dep. p. 49)  Dubis testified, "…no employee is guaranteed a job, whether you've been here for 30 years or 30 days, unless you perform." (Dubis Dep. pp. 68-69)

    c.    **No Request for a Reasonable Accommodation Was Made by Plaintiff**

Plaintiff's allegation that St. Elizabeth refused to accommodate his alleged disability is a misstatement of the facts of this case.  <u>First, it is Plaintiff's duty to request an accommodation</u>.  *Lockard v. Gen. Motors Corp.*, 52 Fed. App'x 782, 788 (6th Cir. 2002) (stating that "[t]he burden remains on the employee to request an accommodation"); *Walsh v. United Parcel Service*, 201 F.3d 718 (6th Cir. 2000)  (upholding award of summary judgment to Defendant because the plaintiff did not request a reasonable accommodation).  Plaintiff did not ask for any accommodation (Blank Dep. pp. 42-43), and it was not Defendant's job to wonder as to Plaintiff's alleged disability or need for an

3

accommodation. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir. 1998) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation").

Furthermore and most importantly, Plaintiff did not mention any health concerns until <u>after</u> he was found sleeping on the job. (Blank Dep. p. 43) Plaintiff had already admitted to the conduct that caused his termination – sleeping on the job – when he discussed his alleged disabilities with Gerald Hynko. (Plaintiff Dep. p. 67-68). At this point, it was too late for Plaintiff to request an accommodation, as he had already committed a serious violation of hospital policy. (Blank Dep. p. 43) It is Plaintiff's obligation to ask for an accommodation at the time he needs one. *See Lockard, supra.* A request for an accommodation made after the fact is not sufficient. *See Melange v. City of Center Line*, 2012 WL 1959319, *5 (6th Cir. 2012) (upholding summary judgment for employer on ADA claim and finding that plaintiff made no request for reasonable accommodation when his alleged request was received by employer after termination); *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1050 (10th Cir. 2011) (upholding summary judgment for employer on plaintiff's discrimination claim and noting that plaintiff's "after-the-fact, fleeting statement mentioning a need to see his doctor, did not put [the employer] on notice that [plaintiff] was requesting reasonable accommodation due to his HIV status.")

        **d.   Disability Must be the But-For Cause of Plaintiff's Termination**

Additionally, Plaintiff fails to recognize that he must demonstrate that his disability was the but-for cause of his termination. A prima facie case of disability discrimination requires a showing of causation, and Plaintiff must put forth evidence to show that, but-for his disability, Defendant would not have terminated his employment. *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012, *en banc*); *see also Hammond v.*

4

*Norton Healthcare, Inc.*, 2012 WL 5039465, *3 (Ky. App. 2012) (upholding summary judgment for employer on plaintiff's disability discrimination clam and noting that the Sixth Circuit, as well as Kentucky federal and state courts, interpret the ADA and Kentucky Civil Rights Act as requiring proof that the disability was the sole cause of the adverse employment action). Plaintiff cannot make this showing since he admitted to sleeping.

    **2.    Plaintiff fails to meet burden of pretext**

        **a.    Temporal Proximity is not applicable**

Plaintiff cites to the *Schrack* case to support his assertion that the temporal proximity between Plaintiff disclosing his health issues and his termination establishes an inference that his alleged disability motivated his termination. (Plaintiff Response p. 30) This case is inapplicable to the circumstances surrounding Plaintiff's termination. In *Schrack*, the employee was terminated but then reinstated and given FMLA leave. *Schrack v. R+L Carriers, Inc.*, Case No. 1:10cv603, 3-4 (S.D. Ohio 2012). The employee was not officially terminated until after the decision-makers had knowledge of his disability. *Id*.

    The decision-makers in the case at bar, however, had no knowledge Plaintiff's health issues until <u>after his infraction occurred</u>. (Chambers Dep. P. 44; Oscadal Dep. p. 67; Dubis pp. 52-53, 78; Blank Dep. p. 37) The decision to terminate Plaintiff was based solely upon the fact that he slept while at work.

        **b.    Defendant's Progressive Discipline Policy Does Not Support Pretext**

St. Elizabeth can apply its discipline policy in a manner it finds appropriate for the given situation. Further, deviations from Defendant's disciplinary guidelines are permitted by the policy language. (Dubis Dep. p. 17; Chambers Dep. p. 30) It was St. Elizabeth's prerogative to accelerate Lehman's discipline from a Level 3 offense to a termination:

> "The Health System does not have the obligation to use these steps and may, at its discretion, omit steps during the course of investigation and ensuing

5

> discipline. The Health System reserves the right to determine the level of discipline depending on the circumstances/severity of the infraction."

(Oscadal Dep. p. 39; Blank Dep. p. 18; Kraft Dep. p. 96) There is no CEO approval required to escalate discipline, and Plaintiff's claim to the contrary is misleading and unsupported. (Plaintiff Response p. 28) The decision to terminate Plaintiff, a supervisor, for sleeping on the job reflects the seriousness of his offense. This decision was reviewed and approved by a Senior VP of Human Resources and Senior VP of Facilities. (Dubis Dep. pp. 29, 41, 46, 58, 59; Oscadal p. 56; Kraft Dep. pp. 59, 65) Further, John Dubis, COO and incoming CEO, reviewed this termination and testified that he had great concerns regarding a security guard sleeping on the job (Dubis Dep. pp. 29, 41, 46, 58, 59) He also upheld Plaintiff's termination during the grievance process due to the serious nature of his infraction. (Dubis Dep. pp. 26, 29).

Plaintiff takes issue in his Response as to whether John Dubis was COO or CEO of St. Elizabeth at the time of Plaintiff's termination. (Plaintiff Response p. 28) Dubis' appointment to the CEO position was announced in June or July of 2010, and Plaintiff was terminated in September 2010. (Dubis Dep. p. 38) Dubis had already been named as CEO at the time of Plaintiff's termination. (Dubis Dep. p. 38) While Marty Oscadal and Doug Chambers made the ultimate decision to terminate Plaintiff, they did so with Dubis' input. (Dubis Dep. p. 29; Oscadal Dep. p. 15)

### c. Ken Rasor is immaterial

In his Response, Plaintiff also takes issue with Ken Rasor and his relationship with Plaintiff. (Plaintiff Response pp. 4-6) The fact that Rasor reported Lehman for sleeping on the job is irrelevant. Plaintiff admitted that he slept at work (Plaintiff Dep. p. 28), and Rasor's involvement was immaterial to whether Plaintiff violated hospital policy. Plaintiff's discussion of Ken Rasor is a smoke screen to disguise the ultimate issue in this case – whether Plaintiff slept on the job. Plaintiff has admitted to sleeping at work and

6

thus the identity and agenda of who initially reported this behavior is completely immaterial.

## III.   PLAINTIFF'S AGE DISCRIMINATION CLAIM FAILS

Plaintiff failed to meet the legal burden required to establish an age discrimination claim. The man who replaced Plaintiff, Rick Smith, is older than Plaintiff and there are no comparators treated less favorably. (Kraft Dep. p. 92)

### 1.   Plaintiff cannot meet *prima facie* case

#### a.   Amanda Rickey is Not a Suitable Comparator

Plaintiff attempts to support his claims by mischaracterizing Amanda Rickey as a similarly situated younger, non-disabled employee who was not terminated for the same offense as Plaintiff. (Plaintiff Response pp. 25-26, 29)  To be similarly situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1998)

The circumstances surrounding Rickey's termination are not similar to Plaintiff's for several reasons. First, Rickey informed her supervisor that she was going to take a nap in a patient room because she was not feeling well. (Blank Dep. p. 46) Rickey put her manager on notice that Rickey was not able to respond to any emergencies that may have arisen. Plaintiff, on the other hand, slept at work without informing anyone. Had an emergency arisen, Plaintiff would have been unable to respond because he was asleep. (Chambers Dep. p. 47) Further, Plaintiff's position and responsibilities as a Security Supervisor were a concern particularly when several of the employees he supervised confirmed that they saw him sleeping. (Oscadal Dep. p. 56)

Additionally, Rickey's discipline and Lehman's termination did not involve the same decision-makers. Despite Plaintiff's unsupported claim to the contrary (Plaintiff Response p. 26), Dubis and Oscadal were not involved in Rickey's discipline. (Oscadal Dep. p. 31; Dubis Dep. p. 30) Finally, Rickey's first offense of sleeping at work occurred before the no-tolerance of sleeping had been put into practice, while Plaintiff's offense occurred after Dubis expressed that St. Elizabeth take this no-tolerance position. (Blank Dep. pp. 46-47, 58-59, 67) Lastly, Rickey was ultimately terminated from St. Elizabeth <u>for sleeping</u> while at work!! (Blank Dep. p. 50)

Plaintiff claims that the Sixth Circuit's decision in *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405 (6th Cir. 2008) eased the showing required for a plaintiff to demonstrate that he or she is similarly-situated to a claimed comparator. (Plaintiff Response pp. 24-25) This is a misapplication of Sixth Circuit law. First, *Martin* was decided before the U.S. Supreme Court's decision in *Gross. v. FBL Financial*, 129 S.Ct. 2343 (2009). *Gross* is controlling on an ADEA claim and requires Plaintiff to show at the pretext stage that age was the but-for cause of St. Elizabeth's actions, not just a motivating reason. *Gross*, 129 S.Ct. at 2351. Further, *Martin* is inapplicable to the case at hand. In *Martin*, the court found that there was a factual issue with regard to whether the employer discriminated against the plaintiff on the basis of his age. *Martin*, 548 F.3d at 412. Here there is no factual issue. Plaintiff admitted that he slept at work and this is the sole reason for his termination. Plaintiff has presented no evidence demonstrating that he was terminated for any other reason and surely cannot meet his "but-for" burden under *Gross*.

### b. Mike Kraft followed policy

Plaintiff raises in his Response the fact that Mike Kraft, Director of Security initially told Plaintiff that he would receive a Level 1 discipline for sleeping at work but then changed this to a Level 3 discipline after speaking with HR and that somehow this

8

demonstrates discrimination. (Plaintiff Response p. 27) Kraft knew there was a policy against sleeping at work and that Plaintiff's admission of sleeping would lead to discipline. (Chambers Dep. p. 68) The fact that Kraft was unsure as to <u>what level</u> of discipline would be received for this offense is not an issue since he knew it required discipline and knew to call HR for this answer. Kraft had knowledge of the policy and enforced it in accordance with his responsibilities as Director of Security. (Kraft Dep. p. 85; Chambers Dep. p. 68)

Lehman, on the other hand, did not know that St. Elizabeth had a policy against sleeping on the job (Kraft Dep. p. 85) and did not enforce this policy for those security guards he supervised. (Chambers Dep. p. 69; Blank Dep. p. 97; Kraft Dep. p. 95) Plaintiff admitted that the policy was available to him and it was his job to enforce this policy in relation to the officers he supervised. (Plaintiff Dep. pp. 24, 25). He failed in both regards.

### c. Plaintiff's Accusations of a "Cover Up" are Baseless

Plaintiff raises an allegation of a mastermind "cover up" by St. Elizabeth in his Response. (Plaintiff Response p. 31) Plaintiff is attempting to argue that St. Elizabeth fired younger employees for sleeping on the job strictly <u>because of</u> Plaintiff's EEOC claim. (Plaintiff Response pp. 30-31) This is completely without merit and unfounded. St. Elizabeth has fired all employees found sleeping at work, regardless of their age, as soon as Dubis directed that St. Elizabeth was to take a hard stance on sleeping at work. (Blank Dep. p. 97) Employment decisions at St. Elizabeth are not made on the basis of whether someone might file an EEOC charge or other type of claim. (Dubis Dep. p. 70)

Plaintiff makes this allegation of a "cover up" because he has no legitimate argument to support his claims and knows that these facts of similar treatment for employees who were caught sleeping are a death knell to his claims. Bottom line, Plaintiff cannot show that he was singled out or treated differently than any other employee found sleeping on the job.

9

## VI. CONCLUSION

Based upon the foregoing, Plaintiff's claims for disability discrimination and age discrimination must fail. There are no material issues of fact. Defendant, St. Elizabeth Medical Center, respectfully renews its request that Plaintiff's lawsuit be dismissed in its entirety with prejudice.

Respectfully submitted,

/s/ Kelly A. Schoening
Robert M. Hoffer     (KBA# 32410)
Kelly A. Schoening (KBA #86745)
Nicholas C. Birkenhauer (KBA #91901)
Dressman Benzinger LaVelle psc
3500 Carew Tower
441 Vine Street
Cincinnati, OH  45202
(513) 357-5284
(513) 241-4551 Fax
E-mail:  kschoening@dbllaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of October, 2012, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system.

/s/ Kelly A. Schoening

352508v2